FOURTH DIVISION

FILED: 03/29/01

No. 1-00-1696

MARION HOSPITAL CORPORATION, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. )

)

ILLINOIS HEALTH FACILITIES PLANNING )

BOARD; PAM TAYLOR, CHAIRMAN, ILLINOIS )

HEALTH FACILITIES PLANNING BOARD; )

ILLINOIS DEPARTMENT OF PUBLIC HEALTH; )

SOUTHERN ILLINOIS ORTHOPEDIC CENTER, )

L.L.C.; SOUTHERN ORTHOPEDIC ASSOCIATES, )

L.L.C., AND SOUTHERN ILLINOIS HOSPITAL )

SERVICES; ) Honorable

) Robert v. Boharic

Defendants-Appellees. ) Judge Presiding.

JUSTICE HOFFMAN delivered the opinion of the court:

The Illinois Health Facilities Planning Board (Board) granted a permit allowing Southern Illinois Orthopedic Center, L.L.C. (SIOC) to construct an ambulatory surgical treatment center in Herrin, Illinois. The plaintiff, Marion Hospital Corporation (Marion), which operates Marion Memorial Hospital, filed a complaint for administrative review in the circuit court of Cook County challenging the issuance of the permit.  The circuit court confirmed the Board's decision, and this appeal followed.

In accordance with the Illinois Health Facilities Planning Act (Planning Act), any party wishing to construct a health care facility must first obtain a permit from the Board.  20 ILCS 3960/5 (West 1998).  The Board shall approve the issuance of a permit if it finds that the applicant is fit, willing, and able to provide a proper standard of health care for the community and that the project is economically feasible, consistent with the public interest, consistent with the orderly and economic development of such facilities, and in accord with the criteria adopted pursuant to section 12 of the Planning Act.  20 ILCS 3960/6 (West 1998).  Pursuant to section 12, the Board has promulgated regulations containing criteria for it to consider when reviewing permit applications.  The regulations relevant to the instant case are contained in sections 1110 and 1120 of Title 77 of the Illinois Administrative Code (Title 77).  77 Ill. Adm. Code §1110, 1120
 (1996).

SIOC is a joint venture between defendants Southern Orthopedic Associates, L.L.C., which is comprised of six orthopedic surgeons practicing in three different southern Illinois cities, and Southern Illinois Hospital Services, which owns and operates a number of hospitals in southern Illinois.  On November 18, 1998, SIOC filed an application to build and operate an ambulatory surgical treatment center (ASTC) specializing in orthopedic procedures and an attached medical office building to house the practices of the orthopedic surgeons.  It estimated the cost of the proposed project as being $8,163,347.  The application, which was supplied by the Board (20 ILCS 3960/6 (West 1998), required the submission of information and documentation relating to the criteria contained in sections 1110.230, 1110.1540, and 1120 of Title 77.  The completed application is greater than 300 pages in length.  As required, the application listed, 
inter
 
alia
, the names of "all the other facilities providing the same service within the planning area and surrounding planning areas within 30 minutes travel time of the proposed facility".  77 Ill. Adm. Code §1110.230(a )(1996).  Among the hospitals identified was Marion Hospital, located 10 miles and a 10 minute drive from the location of the proposed facility.

Pursuant to section 12.2 of the Planning Act, the Illinois Department of Public Health (Department) reviews all permit applications in accordance with the criteria established by the Board.  20 ILCS 3960/12.2 (West 1998).  As part of that review, the Department conducted a public hearing on January 28, 1999, at which it accepted 38 written statements and heard oral testimony from 17 witnesses, 15 of whom had also submitted written statements.

The vast majority of the written and oral testimony was in support of the proposed project.  The City Clerk of Herrin, several members of the Herrin Chamber of Commerce, officers of several local banks, and several local business owners supported the project.  Administrators from Memorial Hospital of Carbondale, St. Joseph Memorial Hospital in Murphysboro, and Herrin Hospital also supported the project, stating their beliefs that the project would not adversely affect  their facilities.

The Department accepted written statements and oral testimony from seven doctors who were affiliated with the SIOC project.  These doctors stated that the proposed project would provide convenience, efficiency, and reduced cost to patients by bringing orthopedic evaluation, testing, surgery, and follow-up together in one location.  Several doctors stressed that other area facilities have a long waiting period for non-emergency orthopedic surgeries and that, accordingly, many patients currently leave the area, sometimes even the state, for non-urgent orthopedic care.  Dr. Robert Golz cited an eight week waiting period for orthopedic evaluations and a four to six week waiting period for elective orthopedic surgery and stated that "health planners from the hospital system" estimate that 40% of orthopedic patients leave the area to seek treatment due to limited access to care.  There was testimony that the ASTC project would alleviate this problem in two ways: 1) by increasing the efficiency of the orthopedic surgeons already working in the area, and 2) by attracting more orthopedic specialists and ancillary staff to the area, something which had been a problem in the past.  There was evidence that, since SIOC filed its permit application, two additional orthopedic surgeons had agreed to join the group.  Dr. John Wood testified he believed this was largely due to the ASTC.  Several of the doctors opined that, in the long term, the ASTC would benefit area facilities by keeping orthopedic patients, some of whom would ultimately require inpatient surgery, from leaving the area.

Local physicians Dr. Jeffrey Parks and Dr. Kevin Oestmann offered oral testimony in support of the project.  Dr. Oestmann testified that, although there are operating rooms available at current facilities, the orthopedic surgeons in the area are so busy providing emergency care, they do not have time to provide elective care.  He opined that orthopedic surgeons practicing at the ASTC would save time now spent traveling from facility to facility and, accordingly, would be able to perform more procedures.  He also opined that the ASTC would attract more orthopedic surgeons to the area.

Only three persons giving evidence at the hearing opposed the project, each one providing a written statement and oral testimony.  Linda Bickers of HealthSouth Surgery Center of Southern Illinois, located in Marion, expressed her opinion that the ASTC would result in a loss of orthopedic surgeries to HealthSouth and other facilities, leaving all area facilities underutilized.  Cindy Ford, chief nursing officer of Harrisburg Medical Center, Inc., stated that various area facilities already have a total of 35 operating room suites, all of which are available for orthopedic surgery.  In her opinion, the ASTC would be a costly duplication of services and would negatively impact current area hospitals.  Finally, Tom Keim opposed the project on behalf of Marion, stating the project would have a negative effect on the hospital.  He further stated that the ASTC did not meet the Board's regulations in many respects, most notably that other surgical facilities located within 30 minutes of the proposed ASTC are not fully utilized.

At the conclusion of the hearing, the hearing officer announced that he would keep the record open until February 5, 1999.  On that date, Marion submitted a statement in opposition to the project, arguing that, based upon the data SIOC provided in its application, Marion's hours of surgery would be reduced by over 1,500 hours per year.  Marion stated that it had an application on file to build a new hospital with a new surgery suite and that SIOC "should work with Marion Memorial to avoid unnecessary duplication of services."  Marion further argued that the proposed ASTC did not meet the requirements of section 1110.1540(g) of Title 77.  The Department also received a letter from Dr. Mark Smith, a local family physician who supported the ASTC project.  Dr. Smith stated that the vast majority of workers' compensation cases he deals with involve orthopedic injuries and that the lengthy delays for orthopedic evaluation and surgery are unacceptable.  He attested to the frustration he himself experienced when, two years earlier, he partially amputated his thumb and had to leave the area for surgery as no orthopedic surgeon in the area felt qualified to perform the procedure.  Finally, Dr. Smith opined that, in the long run, the ASTC would benefit area facilities by keeping more patients in the area for care.

Following the hearing, the Department issued a report to the Board regarding SIOC's application.  In its report, the Department discussed the evidence pertaining to each of the applicable review criteria.  Section 1110.230 of Title 77 contains general review criteria applicable to all projects.  The Department found that the proposed project appeared to be in conformance with all but three of these general review criteria; namely: location, alternatives to the project, and need for the project.  See 77 Ill. Adm. Code §1110.230(a),(e),(f) (1996).  With regard to location, the Department noted the existence of "a large number of underutilized operating rooms" in the area and concluded that the ASTC project "would result in a maldistribution of services in the planning area."  Regarding alternatives to the project, the Department concluded that SIOC should work with other health care providers to develop an outpatient surgery program that better utilizes the area's existing resources.  It noted that, if a freestanding program is developed, it would appear area hospitals would need to close operating rooms.  In support of its finding that SIOC did not meet the need criterion for the ASTC portion of the project, the Department again cited the negative impact the project would have on existing area facilities.

The Department also reviewed the ASTC project to determine its compliance with the criteria contained in section 1110.1540 of Title 77, which apply specifically to ASTCs.  It found that the project appeared to be in conformance with all but two of the applicable review criteria; namely,  impact on other facilities and establishment of new facilities.  See 77 Ill. Adm. Code §1110.1540(f),(g) (1997).  With respect to impact on other facilities, the Department noted that there are nine hospitals and two ASTCs within the proposed project's target area.  It concluded that the ASTC project would have a negative impact on at least four hospitals, namely Harrisburg Medical Center, Marion, Carbondale Memorial Hospital, and Herrin Hospital.  The Department expressed particular concern with regard to Carbondale Memorial Hospital, which had recently received approval to modernize its surgery department based on surgical volume figures which would be significantly reduced by the proposed facility.  The Department also concluded that the proposed ASTC did not appear to be in conformance with the establishment of new facilities criterion, set forth in section 1110.1540(g), because the applicant had failed to establish that: there are no other ASTCs within the intended service area; all of the other ASTCs and hospitals in the service area are being utilized at or above 80% occupancy; or the facility is necessary to improve access to care. 

Finally, the Department considered the proposed project's compliance with the financial and economic feasibility criteria contained in section 1120 of Title 77.  See 77 Ill. Adm. Code §1120.210, 1120.310 (1996).  It found that the proposed project appeared to conform to all such review criteria except the reasonableness of the project cost (77 Ill. Adm. Code §1120.310(d) (1996)).

After the Department issued its report, SIOC amended its application to address the Department's finding that the proposed project did not comply with the reasonableness of the project cost criterion.  It provided revised project costs showing a total cost of $7,648,791.  SIOC also informed the Board that, as part of the project, an operating room at United Mine Workers of America Hospital in Frankfort would be closed to address in part concerns about surgery capacity.

After this material was submitted, the Department issued a supplemental report, in which it re-analyzed, in light of the amendment to the application, the review criteria on which it had previously made unfavorable findings.  The Department again found that the proposed project did not appear to be in conformance with respect to the criteria at issue.

The Board considered SIOC's application at its May 21, 1999, meeting, at which Drs. Tom Davis, Richard Morgan, and Tom Firestone each spoke briefly in support of the project.  At the conclusion of the meeting, the Board voted to approve the application for a permit.  On June 1, 1999, the Board issued a permit letter to SIOC setting forth the terms of the permit.  On July 6, 1999, Marion filed a complaint for administrative review of the Board's decision.  It named as defendants SIOC, Southern Orthopedic Associates, L.L.C., and Southern Illinois Hospital Services (hereinafter referred to collectively as SIOC) and the Board, its chairman, Pam Taylor, and the Department (hereinafter referred to collectively as the State).  The State  filed a motion to dismiss Marion's complaint,  arguing the circuit court lacked jurisdiction over the matter because Marion's complaint was untimely.  The circuit court denied the motion to dismiss and confirmed the Board's decision.

Initially, we must address the merits of SIOC's motion to dismiss the instant appeal as moot, filed after this case was fully briefed and scheduled for oral argument.  A case is rendered moot when events have occurred which make it impossible for the reviewing court to render effectual relief.  
Berlin v. Sarah Bush Lincoln Health Center
, 179 Ill. 2d 1, 8, 688 N.E.2d 106 (1997).  SIOC argues this appeal has become moot because it completed construction of the ASTC on February 9, 2001, and the Department granted it an operating license, pursuant to the provisions of the Ambulatory Surgical Treatment Center Act (Treatment Center Act) (210 ILCS 5/1 
et
 
seq
. (West 1998)), on March 7, 2001.  We do not agree that these events have rendered the appeal moot.

The cases upon which SIOC relies do not support its contention that we must dismiss Marion's appeal.  In 
Renal Care of Illinois, Inc. v. Illinois Health Facilities Planning Board
, 159 Ill. App. 3d 881, 513 N.E.2d 32 (1987), the plaintiff filed an interlocutory appeal from the circuit court's denial of its motion to stay the Board's decision to grant a permit to establish a dialysis facility pending the outcome of the plaintiff's complaint for administrative review.  The court dismissed the interlocutory appeal as moot because construction of the facility was complete and it had begun operation.  
Renal Care
, 159 Ill. App. 3d at 883.  The court did not, however, state that the completion of the facility had any effect on the underlying administrative review action.

Gribben v. Interstate Motor Freight System Co.
, 18 Ill. App. 2d 96, 151 N.E.2d 443 (1958), upon which SIOC also relies, actually supports a finding that the instant appeal remains viable.  In 
Gribben
,  the defendants moved to dismiss the plaintiffs' consolidated appeals from the denial of their motion for a preliminary injunction against the construction of a motor freight terminal and the granting of a summary judgment for the defendants on the plaintiffs' action for a permanent injunction.  The reviewing court held that the completion of the terminal rendered moot the plaintiffs' appeal from the denial of their motion for a preliminary injunction, but not their appeal from the entry of summary judgment for the defendants.  It reasoned that a remedy, i.e. the removal of the terminal, might be available if the plaintiffs were successful on the merits.  
Gribben
, 18 Ill. App. 2d at 101-103.

SIOC argues that Marion can obtain no relief here because the ASTC has already been constructed and an operating permit issued by the Department.  It contends that it did not need a valid permit from the Board to obtain its operating permit and that the revocation of the Board's permit could not result in the revocation of its operating permit from the Department.  We disagree.

The Treatment Center Act provides that no person is allowed to "open, conduct or maintain" an ASTC without obtaining a permit from the Department.  210 ILCS 5/4 (West 1998).  The Department is to issue an operating permit only if the applicant complies with the Treatment Center Act and the rules, regulations, and standards promulgated pursuant to it.  210 ILCS 5/6 (West 1998).  Pursuant to a statutory grant of authority (210 ILCS 5/10 (West 1998), the Department has promulgated regulations which pertain to the licensure of ASTCs and are contained in Part 205 of Title 77 of the Illinois Administrative Code (77 Ill. Adm. Code §205.110 
et
 
seq
. (1996)).

Section 205.120 of Title 77 provides that an initial application for licensure must include, 
inter
 
alia
, documentation of a permit as required by the Planning Act. 77 Ill. Adm. Code §205.125 (1996).  Section 10f of the Treatment Center Act provides that the Department may issue an order of revocation or refuse to renew a license "[w]hen the Director determines that there is or has been a substantial or continued failure to comply with this Act or any rule promulgated hereunder".  210 ILCS 5/10f (West 1998); see also 77 Ill. Adm. Code §205.840 (1996).  Accordingly, despite SIOC's assertion to the contrary, the operating license issued by the Department could potentially be revoked if SIOC were to lose the permit issued by the Board pursuant to the Planning Act.  We, therefore,  conclude that the instant appeal is not moot and deny SIOC's motion to dismiss.

Before turning to the issue raised by Marion on appeal, we must address the State's argument that the circuit court erred in denying its motion to dismiss Marion's complaint for lack of jurisdiction.  Our review is 
de
 
novo
.  
Valio v. Board of Fire & Police Commissioners of Village of Itasca
, 311 Ill. App. 3d 321, 327, 724 N.E.2d 1024 (2000).

Pursuant to section 11 of the Planning Act, "[a]ny person who is adversely affected by a final decision of the State Board" may seek judicial review of that decision in accordance with the procedure established by the Administrative Review Law.  20 ILCS 3960/11 (West 1998).  Section 3-103 of the Administrative Review Law requires that an action for administrative review "shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by that decision".  735 ILCS 5/3-103 (West 1998).  Section 3-103 further provides that the method of service of the decision shall be as provided for in the act governing procedure before the administrative agency in question but that, if no method is so provided, a decision shall be deemed to have been served when it is either personally served or placed in the mail.  735 ILCS 5/3-103 (West 1998).

The Board voted to grant SIOC's permit application on May 21, 1999.  Section 1180.160 of Title 77 provides that the Board shall serve a final copy of its decision on the applicant by personal service or certified mail.  See 77 Ill. Adm. Code §1180.160 (1996).  In accordance therewith, the Board sent SIOC, via certified mail, a letter dated June 1, 1999, informing SIOC that it had been granted a permit and outlining the conditions of the permit.  Neither the Planning Act nor the regulations require that the Board send a copy of its final decision to adversely affected parties such as Marion, and the Board did not, in fact, send Marion written notice of its decision.  Marion filed its complaint for administrative review on July 6, 1999, 46 days after the Board voted to grant SIOC a permit and 35 days after it sent SIOC written notification of its decision.

The State's argument is simple.  It agrees that, for an applicant seeking administrative review of a final decision of the Board, the 35-day period for filing a complaint begins to run on the date the Board serves the applicant with written notice of its decision.  It argues, however, that, as the applicant is the only party to receive written notification of the Board's final decision, the applicant is the only party to whom this starting date applies.  For any other party wishing to appeal the Board's decision, the State contends, the 35-day filing period begins to run on the date of the meeting at which the Board orally announced the decision in question, in this case May 21, 1999.

In support of its position, the State invites us to examine section 11 of the Planning Act in conjunction with section 3-103 of the Administrative Review Law.  As noted, section 11 of the Planning Act provides that "[a]ny person who is adversely affected" by a Board decision may seek judicial review (20 ILCS 3960/11 (West 1998)), and section 3-103 of the Administrative Review Law provides that a complaint for administrative review must be filed within 35 days of the date a copy of the decision was served "upon the party affected by that decision" (735 ILCS 5/3-103 (West 1998)).  "The provisions of the two laws, when read together for plain meaning," the State argues, "indicate they intend to refer to the same person 'affected' and 'adversely affected' by the decision."  Accordingly, the State asserts, Marion was required to file its complaint for administrative review within 35 days of the Board's decision being served upon it.  As the Board did not, however, serve written notice of its decision upon Marion, the State suggests that the most "logical interpretation" is that, as to Marion, the 35-day filing period began to run on May 21, 1999, the date on which the Board voted to approve the permit and on which the permit became effective (See 77 Ill. Adm. Code §1130.140(n) (1996); 77 Ill. Adm. Code §1130.710 (1996)).

We reject the State's interpretation as it runs contrary to the plain language of section 3-103.  Section 3-103 states that service of a copy of an agency's decision shall be made in accordance with the act governing the procedure before the agency, in the instant case by personal service or service by certified mail (see 77 Ill. Adm. Code §1180.160 (1996)), or, if that act does not prescribe a method of service, by personal delivery or deposit in the mail.  735 ILCS 5/3-103 (West 1998). As this court noted in 
Pernalski v. Illinois Racing Board
, 295 Ill. App. 3d 499, 501, 692 N.E.2d 773 (1998), " '[a] copy of the decision' denotes a writing."  Thus it is clear that the Board's oral pronouncement of its decision at the May 21, 1999, meeting, did not constitute service of the Board's decision "upon the party affected by that decision" so as to trigger the running of the 35-day filing period for a complaint for administrative review.

For these reasons, we decline to adopt the State's proposed interpretation of section 3-103 of the Administrative Review Law as applied in conjunction with section 11 of the Planning Act.  Rather, we find that, under the clear language of section 3-103 of the Administrative Review Law, the 35-day period for the filing of a complaint for administrative review by any interested party, including Marion, began to run on June 1, 1999, when the Board sent SIOC a permit letter via certified mail.  As Marion filed its complaint within 35 days of that date, its complaint was timely.  Accordingly, the trial court properly denied the State's motion to dismiss Marion's complaint.

We now turn to the merits of the appeal.  Marion argues that the Board's decision to grant the permit is against the manifest weight of the evidence because SIOC's proposed ASTC project did not meet a number of significant review criteria.

A reviewing court must treat the findings and conclusions of an administrative agency as 
prima
 
facie
 true and correct.  735 ILCS 5/3-110 (West 1998).  Our task when reviewing an agency's decision is to examine the record before us and determine whether the decision is against the manifest weight of the evidence, which occurs only when the opposite conclusion is clearly evident.  
Abrahamson v. Illinois Department of Professional Regulations
, 153 Ill. 2d 76, 88, 
606 N.E.2d 1111 (1992).  If the record contains any evidence to support the agency's decision, we must confirm it.  
Cathedral Rock of Granite City, Inc. v, Illinois Health Facilities Planning Board
, 308 Ill. App. 3d 529, 542, 720 N.E.2d 1113 (1999).  

Marion first argues that the Board's decision to grant SIOC a permit is against the manifest weight of the evidence because SIOC did not establish that its proposed ASTC complied with the establishment of new facilities criterion set forth in section 1110.1540(g) of Title 77.  It contends that compliance with section 1110.1540(g) is mandatory and that, accordingly, we must reverse the Board's decision.

At the time SIOC filed its application, section 1110.1540(g) stated as follows:

"g) Establishment of New Facilities – Review Criterion

Any applicant proposing to establish an ambulatory surgical treatment center 
will be approved only if one of the following conditions exists
:

1) There are no other ASTCs within the intended geographic service area of the proposed project under normal driving conditions; or

2) All of the other ASTCs and hospital equivalent outpatient surgery rooms within the intended geographic service area are utilized at or above the 80% occupancy target; or

3) The applicant can document that the facility is necessary to improve access to care.  Documentation shall consist of evidence that the facility will be providing services which are not currently available in the geographic service area, or that existing underutilized services in the geographic service area have restrictive admission policies." (Emphasis added).  77 Ill. Adm. Code §1110.1540(g) (1997).

Marion contends SIOC did not establish that the ASTC project meets any of these conditions.  SIOC concedes that the requirements set forth in subsections 1 and 2 of section 1110.1540(g) are not met, but contends that it did establish, pursuant to subsection 3, that the ASTC is necessary to improve access to care in the area.  It argues, however, that, even if the project does not comply with section 1110.1540(g), its failure to do so would not prevent the Board from issuing a license.  The State also takes the position that compliance with section 1110.1540(g) is not mandatory.

We must first determine whether compliance with section 1110.1540(g) is, in fact, mandatory.  As set forth above, section 1110.1540(g) states that an applicant "will be approved only if one of the following conditions exists ***."  77 Ill. Adm. Code §1110.1540(g) (1997).  It is upon this language that Marion relies in support of its assertion that the Board cannot issue a permit absent compliance with section 1110.1540(g).  SIOC and the State, however, point us to the language of section 1130.660 of Title 77, which provides that: "The failure of a project to meet one or more review criteria as set forth in 77 Ill. Adm. Code 1110, 1230 or 1240 shall not prohibit the issuance of a permit."  77 Ill. Adm. Code §1130.660 (1997).  Relying thereon, they argue that failure to comply with any one of the review criteria, including section 1110.1540(g), does not prevent the Board from issuing a permit.

The Administrative Code has the force and effect of law, and the rules of statutory construction apply when construing its provisions.  
Medcat Leasing Co. Whitley
, 253 Ill. App. 3d 801, 803, 625 N.E.2d 424 (1993).  The primary rule of statutory interpretation is to ascertain and give effect to the legislature's intent, the best indicator of which is the language of the statute.  
Kunkel v. Walton
, 179 Ill. 2d 519, 533, 689 N.E.2d 1047 (1997).  In construing a statute, courts should not look beyond the statutory language unless that language is ambiguous.  
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990).  Statutes should be evaluated as a whole and, where possible, should be construed in such a manner that no provision is rendered superfluous or meaningless.  
Kraft
, 138 Ill. 2d at 189.  Furthermore, administrative rules and regulations should be construed together with the statute pursuant to which they were adopted in order to insure a sound and effective legislative program.  
Olin Corp. v. Environmental Protection Agency
, 54 Ill. App. 3d 480, 485, 370 N.E.2d 3 (1977).  An agency’s interpretation of its own rule or regulation is generally entitled to great weight.  
Village of Fox River Grove v. Pollution Control Board
, 299 Ill. App. 3d 869, 877, 702 N.E.2d 656 (1998).  This court, however, reviews questions of statutory interpretation 
de
 
novo
 (
In re Dierkes
, 191 Ill. 2d 326, 329, 730 N.E.2d 1101 (2000)), and we will not accord deference to an interpretation which is plainly erroneous or contrary to the clear language of the provision (
Dean Foods Co. v. Illinois Pollution Board
, 143 Ill. App. 3d 322, 334, 492 N.E.2d 1344 (1986), 
Gray Panthers v. Department of Insurance
, 110 Ill. App. 3d 971, 973, 443 N.E.2d 615 (1982)).

Looking first to the language of section 1110.1540(g), we find no ambiguity.  The language of the regulation clearly states that the Board will grant an applicant a permit "only if" one of certain enumerated conditions is met.  We must not, however, read section 1110.1540(g) alone but must read it in conjunction with section 1130.660.  Section 1130.660 unambiguously states that the failure to satisfy one or more of the criteria contained in Part 1110 of Title 77 shall not prevent the issuance of a permit.  We are aware of our duty to construe statutory provisions pertaining to the same subject harmoniously wherever possible.  See 
Williams v. Illinois State Scholarship Comm'n
, 139 Ill. 2d 24, 52, 563 N.E.2d 465 (1990).  Nonetheless, we cannot find any reasonable manner in which these two provisions can be construed in harmony.  Simply put, one regulation provides that failure to comply with section 1110.1540(g) will prevent the issuance of a permit, and the other provides that it will not.  Accordingly,  the regulations contain two conflicting provisions.

It is well-settled that " '[w]here there are two statutory provisions, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one subject, the particular provision must prevail.'  " 
Hernon v. E.W. Corrigan Construction Co. 
, 149 Ill. 2d 190, 195, 595 N.E.2d 561 (1992) (quoting 
Bowes v. City of Chicago
, 3 Ill. 2d 175, 205, 205, 120 N.E.2d 15 (1954)).  Furthermore, where two statutory provisions conflict, the more recently enacted provision takes precedence over the earlier.  
Williams
, 139 Ill. 2d at 58.

Section 1130.660's pronouncement that failure to comply with one or more criteria will not prevent the issuance of a permit applies generally to all of the criteria contained in Parts 1110, 1230, and 1240 of Title 77.  Section 1110.1540(g), however, contains a limitation that applies specifically to the criterion contained therein, which applies only to applications for a permit to establish a new ASTC.  If that criterion is not satisfied, it provides, the applicant will not be approved for a permit.  Thus, although both provisions apply, section 1110.1540(g) is clearly the more specific provision.  Additionally, we note that section 1130.660 was adopted in 1990 (see 14 Ill. Reg. 7183 (eff. May 1, 1990)), while subsection (g) of section 1110.1540 was not added to the regulation until 1996 (see 20 Ill. Reg. 14785 (eff. November 15, 1996)).  Both of these facts support a conclusion that compliance with section 1110.1540(g) is a mandatory prerequisite to the issuance of a permit.

We find further support for this conclusion in the fact that section 1110.1540 (g) is the only one of the review criteria contained in sections 1110.230 and 1110.1540 which provides that an applicant shall be approved for a permit "only if" a certain condition is met.  The remainder of the applicable criteria state that the applicant "must" indicate, detail, define, demonstrate, document, or provide documentation of certain things. See 77 Ill. Adm. Code §1110.230(a)-(h), 1110.1540(a)-(f), (h), (i) (1996).  None of these criteria, however, state that an applicant will be granted a permit "only if" it does so.  

For these reasons, we are compelled to conclude that the Board cannot issue a permit to construct an ASTC to an applicant who fails to establish compliance with section 1110.1540(g).  We recognize that our interpretation is contrary to the Board's own interpretation that compliance with section 1110.1540(g) is not mandatory.  We find that the Board's interpretation, however, is contrary to the plain language of the statute and, accordingly, is entitled to no deference.  See
 
Dean Foods Co.
, 143 Ill. App. 3d at 329; 
Gray Panthers
, 110 Ill. App. 3d at 973.

Having determined that compliance with section 1110.1540(g) is mandatory, we must address Marion's argument that SIOC did not comply with the requirements stated therein.  As noted above, SIOC concedes that it did not satisfy the first two conditions set forth in section 1110.1540(g).  It does, however, contend that it presented evidence establishing the third condition enumerated therein; namely, that its proposed ASTC is necessary to improve access to care in the area.  Pursuant to section 1110.1540(g)(3), the fact that a facility is necessary to improve access to care in the area can be established by evidence that the facility will be providing services which are not currently available in the geographic service area or that existing underutilized services in the geographic service area have restrictive admission policies.  77 Ill. Adm. Code §1110.1540(g)(3) (1997).  SIOC asserts that it established that the ASTC would provide services not currently available in the service area.  Specifically, SIOC contends it would be the only facility  in the area to provide orthopedic evaluation, testing, treatment, surgical procedures, and follow up all in one location and the only facility to provide specialty hand surgery and spine surgery not readily available in southern Illinois.  SIOC also contends that the waiting period for such services at its facility would be drastically shorter than the wait at other area facilities.  Marion argues that none of these things constitute “services” as that term is used in section 1110.1540(g)(3).  Rather, it contends, the services the ASTC will provide are orthopedic surgical procedures, which numerous other area facilities already provide.  Marion also asserts that the Board itself found that SIOC did not comply with section 1110.1540(g)(3).

In its report, the Department concluded the project did not comply with section 1110.1540(g).  The Board, of course, is not bound by the Department's findings; it must make its own decision based on the evidence in the record.  
Highland Park Convalescent Center, Inc. v. Illinois Health Facilities Planning Board
, 217 Ill. App. 3d 1088, 1092, 578 N.E.2d 92 (1991).  The Board made no findings of fact at its May 21, 1999, meeting.  The permit letter it issued to SIOC states only that it approved the application "based upon the project's substantial conformance with the applicable standards and criteria of Parts 1110 and 1120", without making findings of compliance or noncompliance as to any particular criterion.

As Marion points out, the State's brief to this court does contain the following statement: "Although Southern's [SIOC] application failed to conform to the need Criterion  1110.1540.g, the Board's rules provide that failure of a project to meet one or more review criteria shall not prohibit the issuance of a permit.  77 Ill. Adm. Code 1130.660".  At oral argument, the Board asserted that this sentence was a typographical error and that it intended to state only that the Department made a finding of noncompliance.  This assertion aside, the quoted language is not, as Marion contends, tantamount to a finding by the Board.  Our review of an administrative agency's decision is restricted to the record compiled by the agency.  
Caliendo v. Martin
, 250 Ill. App. 3d 409, 419, 620 N.E.2d 1318 (1993).  Thus, just as the parties cannot introduce new evidence on administrative review (735 ILCS 5/3-110 (West 1998)), neither can an agency assert findings not contained in the record.

We recognize that the Planning Act and the regulations require the Board to make factual findings in support of its decision only when it denies a permit application.  20 ILCS 3960/10 (West 1998); 77 Ill. Adm. Code §1130.680 (1996).  An administrative agency's decision must, however, contain sufficient findings to allow judicial review.  See 
Reinhardt v. Board of Education
, 61 Ill. 2d 101, 103, 329 N.E.2d 218 (1975); 
Bodine v. Civil Service Comm'n
, 134 Ill. App. 3d 341, 344, 480 N.E.2d 160 (1985); 
Melrose Park National Bank v. Zoning Board of Appeals
, 79 Ill. App. 3d 56, 59, 398 N.E.2d 252 (1979).  This does not require a factual finding on every evidentiary issue.  
Merrifield v. Illinois State Police Merit Board
, 294 Ill. App. 3d 520, 528, 691 N.E.2d 191 (1997).  Nonetheless, in light of the fact that compliance with section 1110.1540(g) is a mandatory prerequisite to the issuance of a permit, we deem a factual finding on the question of whether SIOC complied with that section to be necessary for our review of the Board's decision.  We note that the Board's failure to make such a finding is understandable in light of the fact that it was operating under the belief that compliance with section 1110.1540(g) was not mandatory.

We find that the appropriate course of action in the instant case is to reverse the circuit court's order confirming the Board's decision, set aside the Board's decision granting SIOC a permit, and, pursuant to section 3-111(6) of the Administrative Review Law (735 ILCS 5/3-111 (West 1998)), remand to the Board with directions that it make specific factual findings as to whether SIOC established compliance with section 1110.1540(g) and enter a new decision not inconsistent with this opinion.

Due to our resolution of this issue, we find it unnecessary to address Marion's argument that the Board's decision should be reversed because SIOC did not establish compliance with the criteria stated in sections subsections (a) and (f) of section 1110.230.

For the foregoing reasons, we deny SIOC's motion to dismiss the instant appeal, reverse the circuit court's order confirming the Board's decision, set aside the Board's decision, and remand this matter to the Board with directions.

Circuit court order reversed; Board's decision set aside, and cause remanded with directions.

HARTMAN, P.J., and BARTH, J., concur.