(Nos. 91426, 91479 cons

MARION HOSPITAL CORPORATION, Appellee, v. THE ILLINOIS HEALTH FACILITIES PLANNING BOARD *et al.*, Appellants.—MARION HOSPITAL CORPORATION, Appellee, v. SOUTHERN ILLINOIS HOSPITAL SERVICES *et al.*, Appellants.

*Opinion filed September 19, 2002.*

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and Timothy K. McPike, Assistant Attorney General, of Chicago, of counsel), for appellants Illinois Health Facilities Planning Board *et al.*

McDermott, Will & Emery, of Chicago (Brian S. Hucker, P.C., and Geoffrey A. Vance, of counsel), for appellants Southern Illinois Hospital Services *et al.*

Gerald W. Shea and Ira Rogal, of Shea, Rogal & Associates, and Robert N. Hutchinson, all of LaGrange, for appellee.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

At issue in this appeal is whether the Illinois Health Facilities Planning Board properly granted a permit to defendant Southern Illinois Orthopedic Center, L.L.C., to construct an ambulatory surgical treatment center.

### BACKGROUND

Pursuant to the Illinois Health Facilities Planning Act (Planning Act) (20 ILCS 3960/1 *et seq.* (West 1998)),[1]

---

[1]The Planning Act is repealed effective July 1, 2003 (Pub. Act 91—782, eff. June 9, 2000). See 20 ILCS 3960/19.6 (West 2000). See also L. Wolfson, *State Regulation of Health Facility Planning: The Economic Theory and Political Realities of Certificates of Need*, 4 DePaul J. Health Care L. 261, 314 (2001).

any person wishing to "construct, modify or establish a health care facility" (20 ILCS 3960/5 (West 1998)) must first obtain a permit from the Health Facilities Planning Board (the Board) (see 20 ILCS 3960/3 (West 1998) (establishing the Board)). A permit is to be granted by the Board if it finds:

"(1) that the applicant is fit, willing, and able to provide a proper standard of health care service for the community with particular regard to the qualification, background and character of the applicant, (2) that economic feasibility is demonstrated in terms of effect on the existing and projected operating budget of the applicant and of the health care facility; in terms of the applicant's ability to establish and operate such facility in accordance with licensure regulations promulgated under pertinent state laws; and in terms of the projected impact on the total health care expenditures in the facility and community, (3) that safeguards are provided which assure that the establishment, construction or modification of the health care facility or acquisition of major medical equipment is consistent with the public interest, and (4) that the proposed project is consistent with the orderly and economic development of such facilities and equipment and is in accord with standards, criteria, or plans of need adopted and approved pursuant to the provisions of Section 12 of this Act." 20 ILCS 3960/6 (West 1998).

In accordance with section 12 of the Planning Act, the Board has adopted administrative regulations which contain standards and criteria for it to consider when reviewing permit applications. The pertinent regulations for this case are set forth in parts 1110 and 1120 of title 77 of the Illinois Administrative Code (title 77). 77 Ill. Adm. Code pts. 1110, 1120 (1996).

The Board is aided in the permit application process by the Illinois Department of Public Health (Department). Under section 12.2 of the Planning Act (20 ILCS 3960/12.2 (West 1998)), the Department conducts the initial review of permit applications that are submitted to the Board. The Department makes findings regarding

the application's compliance with the criteria established by the Board and submits these findings to the Board. See 20 ILCS 3960/12.2 (West 1998). The ultimate decision regarding the permit application, however, remains with the Board. See 20 ILCS 3960/6 (West 1998).

On November 13, 1998, defendant Southern Illinois Orthopedic Center, L.L.C. (SIOC), filed an application with the Board for a permit to construct a "limited specialty orthopedic ambulatory surgical treatment center" (ASTC) in Herrin, Illinois. SIOC is a joint venture between Southern Illinois Orthopedic Associates, L.L.C. (the Associates), which is comprised of six orthopedic surgeons, and Southern Illinois Hospital Services (SIHS), a not-for-profit corporation that operates several hospitals in southern Illinois. The project which was proposed by SIOC in its application included the construction of a building to house the ASTC and a medical office building to house the office practice of the orthopedic surgeons.

On January 28, 1999, as part of its initial review process, the Department held a public hearing on SIOC's permit application. At that time, the Department accepted 38 written statements and heard oral testimony from 17 witnesses. Only three parties opposed the project. Among them was the plaintiff in this case, Marion Hospital Corporation (Marion). Marion operates Marion Memorial Hospital, an institution located approximately 10 miles from the site of the proposed ASTC.

In a written statement submitted subsequent to the hearing, Marion argued against SIOC's project. Marion claimed that, if the ASTC were constructed, Marion's hours of surgery would be reduced by 1,500 hours per year. Marion also noted that it had an application on file to build a new hospital with a new surgery suite and that SIOC "should work with Marion Memorial to avoid unnecessary duplication of services." Finally, Marion

contended that SIOC's application did not satisfy the criteria for the establishment of a new facility that are set forth in section 1110.1540(g) of title 77.

On May 21, 1999, the Board approved SIOC's application and on June 1, 1999, a permit letter was issued to SIOC. On July 6, 1999, Marion, as a party adversely affected by the Board's final decision (see 77 Ill. Adm. Code § 1180.40(e) (1996)), sought judicial review in the circuit court of Cook County, as provided for in section 11 of the Planning Act (20 ILCS 3960/11 (West 1998)). Marion's complaint named as defendants SIOC, the Associates and SIHS (collectively SIOC), as well as the Board, its chairperson, Pam Taylor, and the Department (collectively the state defendants). Subsequent to the filing of Marion's complaint, the state defendants filed a motion to dismiss in which they contended that the circuit court lacked jurisdiction over the case because Marion's complaint was untimely filed. The circuit court denied the motion to dismiss. Thereafter, the circuit court confirmed the Board's decision to issue the permit.

Marion appealed the circuit court's decision. On March 5, 2001, after briefing in the appellate court had been completed, SIOC filed a motion which sought to dismiss the appeal as moot. In that motion, SIOC explained that the permit which it had been granted by the Board had an expiration date of November 21, 2000. Under the Board's rules, this meant that SIOC had to "obligate" the permit, *i.e.*, execute contracts and commit funding to the project, by November 21, 2000, or the permit would expire. SIOC noted that Marion had not sought a stay of the Board's decision from the trial court (see 735 ILCS 5/3—111 (West 1998)), nor had it sought a stay of the circuit court's judgment at either the trial or appellate levels (see 155 Ill. 2d R. 305(d)). SIOC stated that, because Marion had not sought a stay, and because SIOC risked expiration of its permit if it did not move

forward with the project, SIOC had in fact begun and completed construction of the ASTC. SIOC noted in its motion that the ASTC had been completed on February 9, 2001, and that SIOC had spent over $6.6 million towards its completion. In a subsequent filing, SIOC also noted that the Department had granted SIOC an operating license for the ASTC in accordance with the Ambulatory Surgical Treatment Center Act (210 ILCS 5/1 *et seq.* (West 1998)) on March 7, 2001. Based on the above, SIOC argued to the appellate court that "[a]ny order reversing the Board's decision at this late juncture would not be able to undo what has already been done: the capital expenditure has already been made. Accordingly, this appeal should be dismissed as moot."

In its opinion filed March 29, 2001, the appellate court denied SIOC's motion to dismiss, finding that the appeal was not moot. 321 Ill. App. 3d 115, 122-23. In addition, the appellate court rejected the state defendants' argument that Marion's complaint was untimely filed in the circuit court. 321 Ill. App. 3d at 124-25. Finally, the appellate court reversed the circuit court's order, set aside the Board's decision to grant the permit, and remanded the cause to the Board with directions. The appellate court held that section 1110.1540(g) of title 77 was "a mandatory prerequisite to the issuance of a permit" (321 Ill. App. 3d at 128) and, although the Planning Act and related regulations did not require the Board to issue findings of fact unless the permit application was denied, the Board's failure to make specific findings of fact regarding compliance with section 1110.1540(g) made judicial review impossible. Thus, the appellate court remanded the matter to the Board for findings of fact regarding SIOC's compliance with the requirements of section 1110.1540(g). 321 Ill. App. 3d at 126-31.

The state defendants and SIOC filed separate peti-

tions for leave to appeal. The state defendants' petition principally contested the appellate court's conclusion that Marion's complaint was timely filed in the circuit court. 177 Ill. 2d R. 315. The petition was allowed and the cause was docketed in this court as No. 91426. SIOC's petition for leave to appeal contested the appellate court's holding that reversed the circuit court and remanded the cause to the Board for findings of fact. That petition was also allowed and the cause was docketed as No. 91479. The two causes were consolidated for review.

## ANALYSIS

The initial issue we must address in this case is whether the appellate court erred in denying SIOC's motion to dismiss Marion's appeal in the appellate court as moot. SIOC contends that the completion of construction of the ASTC, and the fact that the Department granted SIOC an operating license, rendered any question regarding the propriety of the planning permit moot at the time the appellate court issued its opinion. Thus, SIOC argues that the appellate court should never have reached the merits of the case but, instead, should have dismissed the appeal as moot. We agree.

As acknowledged by the appellate court in this case, when the resolution of a question of law cannot affect the result of a case as to the parties, or when events have occurred which make it impossible for the reviewing court to render effectual relief, a case is rendered moot. See, *e.g.*, *In re Adoption of Walgreen*, 186 Ill. 2d 362, 364 (1999); *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 8 (1997). Both these principles are applicable in the case at bar.

The permit application in the case at bar was submitted to the Board by SIOC in accordance with the Planning Act. 20 ILCS 3960/1 *et seq.* (West 1998). The stated purpose of the Planning Act is "to establish a procedure

designed to reverse the trends of increasing costs of health care resulting from unnecessary construction or modification of health care facilities" so that an "orderly and comprehensive health care delivery system" will be established. 20 ILCS 3960/2 (West 1998). See also L. Wolfson, *State Regulation of Health Facility Planning: The Economic Theory and Political Realities of Certificates of Need*, 4 DePaul J. Health Care L. 261, 274 (2001) (discussing the history of the Planning Act and noting that its purpose "is to address uncontrolled health care costs by limiting unnecessary growth").

As SIOC points out, the Planning Act creates a procedure by which the Board can review proposed expenditures of money on health care facilities and services before that money is spent. The Planning Act grants the Board the authority to prohibit the construction or modification of health care facilities that it deems unnecessary or duplicative. 20 ILCS 3960/2 (West 1998). Importantly, however, the Board does not have any oversight of the operations of a medical facility once it is built. See, *e.g.*, 20 ILCS 3960/5 (West 1998) (noting that the permit issued by the Board is only valid until such time as the project is completed). Hence, once a capital expenditure is approved by the Board and made by the permit holder, any question concerning the propriety of that expenditure—which is the issue addressed by the permit application process—is moot. The capital expenditure has been made and cannot be undone. That was the case here. At the time the appellate court filed its opinion, the ASTC had been built and the capital which SIOC had earmarked for the project had been spent. Thus, when the appellate court filed its opinion, it was a moot question as to whether SIOC's expenditure of funds to construct the facility was duplicative or otherwise unnecessary.

Despite the foregoing, Marion maintains, and the ap-

pellate court below held, that Marion's appeal before the appellate court was not moot because a decision holding that the permit was improperly granted could have affected SIOC's operating license. The appellate court reasoned as follows. Licensing of ambulatory surgical treatment centers is governed by the Ambulatory Surgical Treatment Center Act (Treatment Center Act) (210 ILCS 5/1 *et seq.* (West 1998)). Once an ASTC is constructed, a license is required to open, conduct or maintain the center. 210 ILCS 5/4 (West 1998). Section 10f of the Treatment Center Act states that the Department may issue an order of revocation or refuse to renew a license "[w]hen the Director determines that there is or has been a substantial or continued failure to comply with this Act or any rule promulgated hereunder." 210 ILCS 5/10f (West 1998). One of the administrative rules promulgated by the Department, section 205.120 of title 77 (77 Ill. Adm. Code § 205.120 (1996)), provides that an initial application for licensure must include "[d]ocumentation of a permit as required by the Illinois Health Facilities Planning Act." From this, the appellate court reasoned that "the operating license issued by the Department could potentially be revoked if SIOC were to lose the permit issued by the Board pursuant to the Planning Act." 321 Ill. App. 3d at 123. Therefore, the appellate court concluded that the appeal was not moot and denied SIOC's motion to dismiss. 321 Ill. App. 3d at 123.

The appellate court's conclusion that SIOC's operating license could "potentially" be revoked by the Department is incorrect. As noted, section 205.120 of title 77 requires an applicant for an ASTC operating license to have "documentation of a permit" issued by the Board in order to receive an initial operating license. At the time SIOC applied for its initial operating license, it possessed such documentation. Prior to the filing of the appellate court opinion, the permit granted to SIOC by the

Board had, at no time, been stayed, reversed or otherwise legally invalidated. Accordingly, SIOC possessed documentation of a legally valid permit and was in compliance with section 205.120 of title 77 when it applied for and received its initial operating license. Indeed, nothing in section 205.120 or elsewhere in the administrative regulations indicates that the Department could have properly refused to grant SIOC an operating license when SIOC possessed a legally valid permit issued by the Board. Thus, contrary to the appellate court's determination, section 205.120 provided no basis for the Department to "potentially" revoke SIOC's operating license.

Marion also points to section 13.1 of the Planning Act in support of its contention that the appellate court did not err in denying SIOC's motion to dismiss. Section 13.1 provides:

"Any person establishing, constructing, or modifying a health care facility or portion thereof without obtaining a required permit, or in violation of the terms of the required permit, shall not be eligible to apply for any necessary operating licenses or be eligible for payment by any State agency for services rendered in that facility until the required permit is obtained." 20 ILCS 3960/13.1 (West 1998).

Marion contends that, under section 13.1, SIOC would not be eligible to *renew* its operating license without a valid planning permit. Marion maintains, therefore, that if it had ultimately prevailed in the appellate court, and established that SIOC's permit was improperly granted, SIOC would have been forced to lose its operating license. Thus, Marion contends that it could have been granted effective relief by the appellate court's decision and, therefore, that its appeal before the appellate court was not moot.

Section 13.1 offers no support for Marion. Section 13.1 pertains to applicants "establishing, constructing, or modifying" a medical facility. As such, its scope is

limited to applicants applying for an *initial* operating license for a new, or a newly added, facility. As noted above, SIOC obtained and possessed a legally valid permit at the time it applied for and received its initial operating license. Furthermore, we note that section 205.125 of title 77 (77 Ill. Adm. Code § 205.125 (1996)), the administrative regulation that governs applications for license renewal before the Department, does not require, and makes no mention of, a permit issued by the Board.

As stated, when the resolution of a question of law cannot affect the result of a case as to the parties, or when events have occurred which make it impossible for the reviewing court to render effectual relief, an appeal is rendered moot. See, *e.g.*, *In re Adoption of Walgreen*, 186 Ill. 2d at 364; *Berlin*, 179 Ill. 2d at 8. That was the situation here when the appellate court filed its opinion. No statute or regulation had been cited which would have authorized the Department to suspend or revoke SIOC's operating license or otherwise limit its medical functions based on an improperly granted planning permit. Thus, the resolution of the question of law presented in Marion's appeal could have had no effect on the result of the case as to the parties and the appellate court could not have rendered Marion effectual relief. Before this court, Marion has not argued that any exception to the mootness doctrine would have permitted the appellate court to consider Marion's appeal. Accordingly, the issue raised in Marion's appeal before the appellate court, *i.e.*, whether SIOC's planning permit was properly granted by the Board, was moot and the appeal should have been dismissed.

Because Marion's appeal was moot, the appellate court's opinion was wholly advisory. Advisory opinions are to be avoided. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 157 (2002), citing *Barth v. Reagan*, 139 Ill. 2d 399, 419 (1990). For this reason, we vacate the judgment of

the appellate court. See *Oliveira*, 201 Ill. 2d at 157. In light of our disposition of this case, we do not reach any of the other issues raised by the parties in the instant appeals.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court is vacated.

*Appellate court judgment vacated.*

JUSTICES GARMAN and RARICK took no part in the consideration or decision of this case.