# Illinois Official Reports

## Appellate Court

---

**Advanced Ambulatory Surgical Center, Inc. v. Health Facilities & Services Review Board**,
**2014 IL App (4th) 130468**

---

Appellate Court
Caption

ADVANCED AMBULATORY SURGICAL CENTER, INC., an
Illinois Corporation, Plaintiff-Appellant, v. THE HEALTH
FACILITIES AND SERVICES REVIEW BOARD, Defendant-
Appellee.

District & No.

Fourth District
Docket No. 4-13-0468

Filed

April 16, 2014

Held

(*Note: This syllabus
constitutes no part of the
opinion of the court but
has been prepared by the
Reporter of Decisions
for the convenience of
the reader.*)

The facts that plaintiff corporation had completed its ambulatory
surgical center and had been issued an operating license by the
Department of Public Health did not terminate the right of defendant,
the Health Facilities and Services Review Board, to impose a fine on
plaintiff pursuant to the Illinois Health Facilities Planning Act for
failing to follow the correct procedures for reporting an unavoidable
interest expense incurred in connection with the construction of the
center, since defendant was not unreasonable in interpreting the Act to
allow the imposition of a fine on plaintiff even though the violation
was not discovered until after the project was completed.

Decision Under
Review

Appeal from the Circuit Court of Sangamon County, No. 11-MR-90;
the Hon. John P. Schmidt, Judge, presiding.

Judgment

Affirmed.

Counsel on
Appeal

Thomas J. Pliura (argued), of Law Offices of Thomas J. Pliura, of LeRoy, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and John P. Schmidt (argued), Assistant Attorney General, of counsel), for appellee.

Panel

PRESIDING JUSTICE APPLETON delivered the judgment of the court, with opinion.
Justices Pope and Knecht concurred in the judgment and opinion.

## OPINION

¶ 1    The plaintiff in this case is Advanced Ambulatory Surgical Center, Inc., and the defendant is the Illinois Health Facilities and Services Review Board. Defendant issued plaintiff a permit to build an ambulatory surgical center. Seven years after plaintiff finished construction of the facility and the Illinois Department of Public Health (Department) issued plaintiff a license to operate it, defendant notified plaintiff of its intent to fine plaintiff because of (1) an unauthorized cost overrun in the construction and (2) plaintiff's failure to respond to a request for more information about the cost overrun. Plaintiff demanded an administrative hearing.

¶ 2    While the administrative proceeding was underway, plaintiff sued defendant in circuit court. On the basis of *Marion Hospital Corp. v. Illinois Health Facilities Planning Board*, 201 Ill. 2d 465 (2002), plaintiff sought a judicial declaration that defendant no longer had authority to impose a fine on plaintiff, considering that plaintiff had finished building the ambulatory surgical center and the Department had issued plaintiff a license to operate it. Plaintiff also asked the circuit court to rule that *laches* barred defendant from imposing a fine and requesting more information.

¶ 3    The parties filed cross-motions for summary judgment. The circuit court denied plaintiff's motion and granted defendant's motion. Plaintiff appeals.

¶ 4    We do not decide–and are not asked to decide–whether plaintiff actually deserves to be fined in these circumstances; that is for defendant to decide. In our *de novo* review, however, we reject plaintiff's argument that the completion of construction and the Department's issuance of an operating license terminated defendant's authority to impose a fine under sections 14.1(a)(4) and (b)(2) of the Illinois Health Facilities Planning Act (Act) (20 ILCS 3960/14.1(a)(4), (b)(2) (West 2012)). See *Fifth Third Bank, N.A. v. Rosen*, 2011 IL App (1st) 093533, ¶ 21 (the denial of a motion for summary judgment is appealable if both parties file motions for summary judgment and the circuit court grants one motion and denies the other);

- 2 -

*People ex rel. Madigan v. Kole*, 2012 IL App (2d) 110245, ¶ 18 (the appellate court interprets statutes, and reviews summary judgments, *de novo*). As for *laches*, that is a defense for defendant to adjudicate in the first instance, not the circuit court. Therefore, we affirm the circuit court's judgment.

¶ 5                                    I. BACKGROUND

¶ 6        Section 5 of the Act (20 ILCS 3960/5 (West 1996)) forbids any person to "construct, modify or establish a health care facility *** without first obtaining a permit or exemption from [defendant]."

¶ 7        On June 24, 1996, plaintiff applied to defendant's predecessor, the Health Facilities Planning Board, for a permit to build an ambulatory surgical treatment center. (Henceforth, we will make no distinction between defendant and its predecessor. See 20 ILCS 3960/4(b) (West 2010) (on March 1, 2010, the powers and duties of the Health Facilities Planning Board were transferred to defendant).) In its application, plaintiff submitted cost estimates for the project.

¶ 8        On January 27, 1997, defendant issued plaintiff a permit to build the ambulatory surgical treatment center. According to the permit letter, the "permit amount" for the project, project No. 96-041, was $2,745,408, and the permit was "valid only for the defined *** amount."

¶ 9        After plaintiff received the permit but before it completed construction, a potential business competitor brought a lawsuit challenging the permit. See *Dimensions Medical Center, Ltd. v. Advanced Ambulatory Surgical Center, Inc.*, 305 Ill. App. 3d 530 (1999), *appeal denied*, 185 Ill. 2d 622 (1999). The lawsuit named both plaintiff and defendant. Construction was suspended for 722 days, pending the outcome of the litigation in the circuit court and the appellate court. Interest on the construction loan continued to accrue during the suspension of construction. As a result, plaintiff incurred an additional expense of 722 days' interest, approximately $346,994. Of course, it was impossible to include this additional interest expense in plaintiff's original cost estimate, the estimate plaintiff submitted to defendant in its application for the permit.

¶ 10       On May 4, 2000, the Department issued plaintiff a license to operate the ambulatory surgical treatment center. See 210 ILCS 5/4 (West 2000) ("No person shall open, conduct or maintain an ambulatory surgical treatment center without first obtaining a license from the Department.").

¶ 11       On June 15, 2000, having completed construction, plaintiff filed with defendant its final cost report, which included the additional interest expense. The final cost report remarked:

> "The Project has not changed as originally approved in regards to the number of OR [(operating room)] suites, square footage, etc. The increase in the net interest expense line item has increased due to a law suit that was filed by Dimensions Medical Center, [Ltd.,] naming Advanced Ambulatory Surgical Center, Inc[.], and the Illinois Health Facilities Planning Board as defendants, which delayed the opening of the facility."

Plaintiff's chief executive officer, Steven J. Subach, Sr., and several other officers or partners certified under oath: "[T]he amount of itemized project cost on the previous page are [*sic*] the total cost required to complete the project and there are no additional or associated costs or capital expenditures related to the project ***."

¶ 12        On July 13, 2000, defendant held an "agenda meeting," and at defendant's request, Subach appeared before the board members and answered questions about the cost overrun, which defendant regarded as a unilateral alteration of the project: an alteration that defendant had not approved ahead of time, before the additional expense was incurred. Subach explained that the lawsuit filed by the business competitor had been resolved but that while it was underway, defendant was "in a situation where the interest and the construction loan and everything [were] accruing." One of the board members, Richard Wright, noted–and Subach confirmed–that all the expenses had "c[o]me in exactly as [plaintiff] had estimated [in its original cost estimate], except for the interest expense." A motion carried to "defer and refer," and Chairman Pam A. Taylor told Subach: "You will be hearing from our Staff."

¶ 13        On July 14, 2000, Ray Passeri, the chief of defendant's Division of Facilities Development, wrote Subach, informing him that defendant's attorney, Barbara Weiner, would be contacting Subach to reach a settlement on the unauthorized alteration of the project. According to Passeri, Weiner wanted plaintiff to provide a written response to two questions so she could draft a settlement agreement:

"1. Your final cost report stated that the net interest expense during construction was $451,326. What was the nature and total amount of funds borrowed that generated this expense?

2. You stated that the additional interest expense that was over your permit amount was $346,994, and that this was due to a delay because of a lawsuit. This expense still appears high. Can you explain in detail how this figure was arrived at?"

¶ 14        Subach replied to Passeri in a letter dated September 26, 2000. He explained that the principal balance of the construction loan was $1.9 million. At the initiation of the loan, plaintiff paid interest in the amount of 1% of the principal balance, $19,000. Afterward, from May 12, 1997, to May 12, 2000, plaintiff paid additional interest totaling $432,326. Those amounts added together ($19,000 + $432,326) equaled $451,326. As for the cost overrun of $346,994, the litigation lasted from January 26, 1997, to January 18, 1999, resulting in a project delay of 722 days. According to Subach, interest at 9.25% on a loan of $1.9 million was $481 per day, and when $481 was multiplied by 722 days, the result was $346,994. (We come up with a slightly different amount: $481 x 722 = $347,282.)

¶ 15        On January 22, 2002, defendant's executive secretary, Patricia M. Sweitzer, sent plaintiff a letter stating that defendant was "attempting to update [its] files" and noting that project No. 96-041 "was not completed within the time-frames under the [defendant's] rules." Sweitzer requested the following information:

"(1) The date the project was completed;

(2) The final project cost;

(3) Copies of any correspondence with our office regarding the completion of this project;

(4) Certification that the square footage, number of beds or stations, and the services involved were the same as approved by [defendant]."

Plaintiff says in its brief: "Whatever happened in response to that 2002 duplicative request has been lost to history."

¶ 16        On October 29, 2007, defendant served upon plaintiff a notice of its intent to fine plaintiff $85,000 pursuant to sections 14.1(a)(2), (a)(3), (a)(4), (b)(2), and (b)(4) of the Act (20 ILCS

3960/14.1(a)(2), (a)(3), (a)(4), (b)(2), (b)(4) (West 2000)) and to sections 1130.750 and 1130.770(g) of defendant's rules (77 Ill. Adm. Code 1130.750, 1130.770(g), amended at 24 Ill. Reg. 6013, 6046, 6048 (eff. Apr. 7, 2000)). Attachment A of the notice explained:

"D. [Plaintiff's] alleged violations are based upon the following facts:

(1) On 22 January 2002, [defendant] requested additional information from [plaintiff] regarding completion of Project number 96-041.

(2) [Defendant], as of the date of mailing this Notice, has not received a response from [plaintiff] with the requested information.

(3) In the permit approval letter dated 27 January 1997, [defendant] noted that the approved permit amount for project number 96-041 was $2,745,408.

(4) On 16 June 2000, [defendant] received [plaintiff's] report of final realized costs certifying that the final cost for Project number 96-041 was $3,092,402.

(5) The difference between the approved permit amount and the project's final cost is $346,994, which represents an increase of thirteen percent over the approved permit amount.

(6) [Defendant] did not receive notice from [plaintiff] prior to this project alteration.

(7) [Defendant] did not approve any alteration to the permit amount for Project number 96-041."

¶ 17 On January 11, 2011, plaintiff filed a complaint for declaratory judgment. The complaint sought essentially two declarations: (1) defendant had "no jurisdiction over a former permit holder," and had "no authority to require additional information from a former permit holder," after the permit expired and the Department issued a license to operate the health care facility; and (2) the doctrine of *laches* barred defendant from demanding further information or imposing a fine.

¶ 18 After written discovery, the parties filed cross-motions for summary judgment. On May 6, 2013, the circuit court denied plaintiff's motion and granted defendant's motion.

¶ 19 This appeal followed.

¶ 20                                    II. ANALYSIS
¶ 21                                 A. *Marion Hospital*

¶ 22 On the authority of *Marion Hospital*, plaintiff argues that when its permit expired and the Department issued to plaintiff an operating license, defendant lost "jurisdiction" over plaintiff. As we will explain, however, *Marion Hospital* is about mootness, and the question of whether plaintiff should pay a fine is not moot.

¶ 23 In *Marion Hospital*, the Illinois Health Facilities Board issued to Southern Illinois Orthopedic Center, L.L.C. (the clinic), a permit to build a limited specialty orthopedic ambulatory treatment center. *Marion Hospital*, 201 Ill. 2d at 468. A potential business competitor of the clinic, Marion Hospital Corporation (Marion), then filed a lawsuit challenging the permit. *Id.* at 469. The clinic prevailed in the circuit court, and Marion appealed. *Id.*

¶ 24 After briefing, the clinic filed a motion to dismiss the appeal as moot on the grounds that the clinic had completed construction of the facility and the Department had issued the clinic an operating license. *Id.* at 469-70. The clinic argued that, at this juncture, any order reversing

the Board's decision to issue a permit would be academic because the capital expenditure had been made and the facility had been built. *Id.* at 470.

¶ 25 The appellate court denied the clinic's motion for dismissal, and the supreme court granted the clinic's petition for leave to appeal. *Id.* at 471. The question before the supreme court was whether the construction of the facility and the issuance of the operating license had indeed made the appeal moot, as the clinic argued. *Id.* The supreme court answered yes. *Id.* It reasoned as follows:

> "[T]he Board does not have any oversight of the operations of a medical facility once it is built. See, *e.g.*, 20 ILCS 3960/5 (West 1998) (noting that the permit issued by the Board is only valid until such time as the project is completed). Hence, once a capital expenditure is approved by the Board and made by the permit holder, any question concerning the propriety of that expenditure–which is the issue addressed by the permit application process–is moot. The capital expenditure has been made and cannot be undone. That was the case here. At the time the appellate court filed its opinion, the [facility] had been built and the capital which [the clinic] had earmarked for the project had been spent. Thus, when the appellate court filed its opinion, it was a moot question as to whether [the clinic's] expenditure of funds to construct the facility was duplicative or otherwise unnecessary." *Id.* at 472.

¶ 26 Plaintiff also cites *Provena Health v. Illinois Health Facilities Planning Board*, 382 Ill. App. 3d 34, 50 (2008), in which the First District correctly interpreted *Marion Hospital* as holding: "Because the Board has no oversight of a medical facility's operations once it has been built (20 ILCS 3960/5 (West 1998)), any question concerning the propriety of that expenditure–the issue addressed by the permit application process–was moot."

¶ 27 *Marion Hospital* is inapposite for three reasons. First, in the present case, defendant is not trying to exercise "oversight of the operations of a medical facility once it is built." *Marion Hospital*, 201 Ill. 2d at 472. Defendant is not trying to tell plaintiff how to run its ambulatory surgical treatment center.

¶ 28 Second, defendant is not necessarily suggesting that the additional interest expense plaintiff incurred was "duplicative or otherwise unnecessary." *Id.* Rather, defendant is taking punitive action against plaintiff for allegedly failing to follow an administrative procedure. There was a procedure for adding even an unavoidable expense. "A permit is valid only for the *** amount *** in the application" (77 Ill. Adm. Code 1130.750, amended at 24 Ill. Reg. 6013, 6045 (eff. Apr. 7, 2000)), and a cost overrun incurred without defendant's prior approval is an unauthorized alteration of the project, for which defendant can impose a fine on the permit holder (20 ILCS 3960/14.1(b)(2) (West 2000); 77 Ill. Adm. Code 1130.750(c)(2)(E), amended at 24 Ill. Reg. 6013, 6045 (eff. Apr. 7, 2000)). It does not appear that the cost overrun would invalidate plaintiff's permit, considering that plaintiff incurred the cost overrun "after project obligation" rather than "prior to obligation" (77 Ill. Adm. Code 1130.750(d)(1), amended at 24 Ill. Reg. 6013, 6046 (eff. Apr. 7, 2000)). See 77 Ill. Adm. Code 1130.140, amended at 24 Ill. Reg. 6013, 6025 (eff. Apr. 7, 2000) (definitions of "obligation" and "project obligation"). Nevertheless, "[a] permit holder that has incurred an alteration without providing prior notice is in violation of permit validity requirements of [section 1130.750] and is subject to the imposition of sanctions or penalties as provided by the Act" (77 Ill. Adm. Code 1130.750, amended by 24 Ill. Reg. 6013, 6045 (eff. Apr. 7, 2000)), specifically, section 14.1(b)(2) of the Act (20 ILCS 3960/14.1(b)(2) (West 2000)).

¶ 29        Third, the appeal in *Marion Hospital* was moot because it no longer was possible for a court to award Marion the relief that Marion sought. By challenging the permit, Marion aimed to prevent the construction of the proposed medical facility. During the litigation, construction of the facility was completed. It was impossible to prevent the construction of the facility once construction was complete. In the present case, by contrast, the relief that defendant pursues is a fine, not a rescission of the permit it issued plaintiff. A fine would be "effectual relief" for defendant. *Marion Hospital*, 201 Ill. 2d at 471.

¶ 30                                    B. Section 14.1

¶ 31        Plaintiff argues that "[s]ection 14.1 of the Act, under which Defendant seeks to fine Plaintiff, exclusively involves current permit-holders" and it "does not provide authority for Defendant to impose a post-licensure fine upon a *former* permit holder for any reason." (Emphasis in original.)

¶ 32        Section 14.1(b)(2) of the Act provides as follows:

> "(b) Persons shall be subject to fines as follows:
>
>           ***
>
>           (2) A *permit holder* who alters the scope of an approved project or whose project costs exceed the allowable permit amount without first obtaining approval from the State Board shall be fined an amount not to exceed the sum of (i) the lesser of $25,000 or 2% of the approved permit amount and (ii) in those cases where the approved permit amount is exceeded by more than $1,000,000, an additional $20,000 for each $1,000,000, or fraction thereof, in excess of the approved permit amount." (Emphasis added.) 20 ILCS 3960/14.1(b)(2) (West 2000).

¶ 33        Who is a "permit holder" within the meaning of section 14.1(b)(2)? Is this term limited to the holder of a permit that is still valid? Or does it also include the holder of a permit that, because of the completion of construction, no longer is valid? See 20 ILCS 3960/5 (West 2000) ("A permit shall be valid until such time as the project has been completed ***.").

¶ 34        "[T]o the extent that there are any ambiguities, this court should give deference to the administrative agency's interpretation of the [statute] it was created to enforce." *State of Illinois Department of Central Management Services v. State of Illinois Labor Relations Board, State Panel*, 373 Ill. App. 3d 242, 249 (2007). Defendant interprets "permit holder" as including the holder of a permit which, because of the completion of the project, no longer is valid. Defendant explains that, unless the permit holder seeks prior approval of a cost overrun (as the permit holder should do), defendant becomes aware of the cost overrun only when the permit holder files its report of final realized costs–after the completion of construction. Defendant argues it would be absurd to "allow permit holders to escape discipline because their violations are not discovered or discoverable until after completion of the relevant project." We find defendant's interpretation of section 14.1(b)(2) to be reasonable, and consequently we defer to that interpretation. See *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 657 (2005).

¶ 35                                    C. *Laches*

¶ 36    Plaintiff argues "the matter should be remanded back to the Circuit Court for a fact determination on the *Laches* claim." We disagree. In administrative review cases, the agency, not the circuit court, is the trier of fact.

¶ 37    Section 11 of the Act (20 ILCS 3960/11 (West 2012)) adopts the provisions of the Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2012)). Section 3-110 of the Administrative Review Law provides as follows:

> "§ 3-110. Scope of review. Every action to review any final administrative decision shall be heard and determined by the court with all convenient speed. The hearing and determination shall extend to all questions of law and fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2012).

Because the circuit court may hear no new or additional evidence and because the circuit court reviews the findings and conclusions of the administrative agency on questions of fact instead of making its own findings and conclusions on questions of fact, it follows that the Board must first decide the issue of *laches*–which, plaintiff says, calls for a "fact determination"–and only then may the court consider *laches*. See *Christ Hospital & Medical Center v. Human Rights Comm'n*, 271 Ill. App. 3d 133, 137 (1995); *Dunn v. Director, Department of Labor*, 131 Ill. App. 3d 171, 173-74 (1985).

¶ 38    We realize defendant already has taken a position on plaintiff's invocation of *laches*. We realize that, in its cross-motion for summary judgment, defendant argued, on the authority of *Wabash County, Illinois v. Illinois Municipal Retirement Fund*, 408 Ill. App. 3d 924, 933 (2011): "[B]ecause Plaintiff has no evidence of any affirmative act of a government official upon which Plaintiff relies, Plaintiff cannot sustain its laches defense." And defendant reiterates that argument on appeal. Nevertheless, "the fact that there are clear indications that the agency may or will rule adversely is generally inadequate to terminate the administrative process or to avoid the exhaustion requirement." *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 328 (1989). "The rule requiring resort to an administrative agency in the first instance is in the interest of orderly procedure. It cannot be avoided by evidence of intent to deny the relief sought." *Bank of Lyons v. County of Cook*, 13 Ill. 2d 493, 497 (1958).

¶ 39                                    III. CONCLUSION

¶ 40    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 41    Affirmed.