**2023 IL 128260**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 128260)

MIDWEST COMMERCIAL FUNDING, LLC, Appellant, v. ROBERT
SYLVESTER KELLY (Heather Williams, Appellee).

*Opinion filed March 23, 2023.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, and
Cunningham concurred in the judgment and opinion.

Justice Rochford took no part in the decision.

## OPINION

¶ 1     This case concerns a dispute between two judgment creditors over lien priority.
Midwest Commercial Funding, LLC (Midwest), and Heather Williams, each
creditors of Robert Sylvester Kelly, served citations to discover assets on Sony
Music Holdings, Inc. (Sony), which paid music royalties to Kelly. Sony received

Midwest's citation by e-mail before it received Williams's citation sent registered mail, return receipt requested, through the United States Postal Service (USPS). The Cook County circuit court found Midwest's lien had priority over Williams's lien based on the electronic service. The appellate court disagreed, finding that electronic service was not authorized for service of a citation to discover assets, so Midwest's electronic delivery of the citation to discover assets to one of Sony's attorneys did not perfect its lien prior to Williams. 2022 IL App (1st) 210644. It reversed and remanded for entry of an order prioritizing Williams's lien. We affirm the judgment of the appellate court.

¶ 2                                    I. BACKGROUND

¶ 3        Williams obtained a $4 million judgment against Kelly in March 2020 for his physical and sexual abuse of her when she was a minor. Midwest obtained a $3,484,420.70 judgment against Kelly in July 2020 for breach of a commercial real estate lease. Sony was not a party to either Williams's or Midwest's lawsuits against Kelly. Williams and Midwest each sought to satisfy their judgments through royalties Sony paid Kelly. At the time of the citation proceedings, Sony held $1,544,333 in royalties due Kelly. Williams sent via registered mail a citation to discover assets to Sony on August 17, 2020, with return receipt requested. On August 19, 2020, Midwest e-mailed its citation to discover assets and also sent a copy through the regular mail. Midwest's e-mail was directed to David Castagna, who was a member of Sony's legal staff with whom Midwest had dealt on prior, unrelated matters. On August 24, 2020, Williams's citation was delivered to Sony. Also on August 24, 2020, Castagna acknowledged receipt of the citation e-mailed by Midwest. Castagna answered Midwest's citation on August 27, 2020, via a mailed response to Midwest. Castagna indicated Sony would appear on the citation and informed Midwest that it had received Williams's citation to discover assets on August 25, 2020. However, Williams's USPS receipt indicated delivery to Sony occurred on August 24, 2020.

¶ 4                              A. Trial Court Proceedings

¶ 5        Midwest intervened in Williams's citation action and filed an adverse claim to the royalties held by Sony. Williams intervened in Midwest's citation proceeding

and also asserted an adverse claim to the royalties. Williams challenged Midwest's priority claim, provided a USPS return receipt showing service on Sony occurred on August 24, 2020, and argued that because Sony was served with both citations on August 24, 2020, equity directed that her lien should be prioritized over Midwest's lien.

¶ 6         Following a hearing, the trial court found that Midwest's lien was entitled to priority. It noted that neither Midwest nor Williams had challenged whether service was proper and that Sony accepted service and responded to both citations without objecting to either service or the citations. Relying on Illinois Supreme Court Rule 12(c) (eff. July 1, 2017), the trial court concluded that Midwest's citation was entitled to priority because it was served on August 19, 2020, via e-mail, several days prior to USPS delivery of Williams's citation on August 24, 2020. The court ordered Sony to satisfy Midwest's lien before it could pay any royalties to Williams.

¶ 7         Williams sought reconsideration of the trial court's order and raised for the first time in her motion to reconsider a challenge to the propriety of electronic service of Midwest's citation. She supplemented her motion with what she characterized as new evidence, purported to reveal that Midwest was conspiring with Kelly to hide funds from his creditors. The trial court denied Williams's motion for reconsideration, finding that she had waived her challenge to e-mail service by raising the issue for the first time in her motion to reconsider. The court also rejected her claims of new evidence.

¶ 8                                B. Appellate Court Proceedings

¶ 9         Williams appealed, and the appellate court reversed the trial court's decision. It disregarded Williams's forfeiture of the challenge to service, found that Williams had standing to challenge Midwest's e-mail service on Sony, and concluded that e-mail service was not a recognized method for service of a citation to discover assets. It further found that Williams's citation was entitled to priority, as it was complete four days after she mailed it based on Illinois Supreme Court Rule 12 (eff. July 1, 2017). The appellate court ordered the trial court to enter an order directing Sony to turn over the royalty funds to Williams and to continue to turn over the royalties

until Williams's $4 million lien was satisfied. Midwest appealed.

## II. ANALYSIS

### A. Standing

We begin our analysis with a determination of whether Williams has standing to challenge service on Sony. Midwest contends that Williams cannot object to service on Sony's behalf. In response, Williams maintains that she has a real interest in the citation proceedings, which entitles her to challenge service on Sony. We agree with Williams.

The standing doctrine "assures that issues are raised only by those parties with a real interest in the outcome of the controversy." *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). Standing requires "some injury in fact to a legally cognizable interest." *Id.* The injury may be actual or threatened and "must be (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." *Id.* We review issues of standing *de novo. Piccioli v. Board of Trustees of the Teachers' Retirement System*, 2019 IL 122905, ¶ 12.

Williams has standing. She is asserting her own right to payment of the royalties, not any rights that belong to Sony. She, herself, has a real interest in the outcome of the citation proceeding involving Sony. Williams's injury of losing her lien priority is distinct and palpable, it can be traced to Sony's actions, and the relief she requested from this court would prevent or redress her injury. If Midwest's service of process on Sony via e-mail is deemed proper, she is prevented from asserting a priority position to satisfy the judgment she obtained against Kelly. In the alternative, if this court concludes Midwest's service on Sony via e-mail is invalid, her lien takes priority because notice of it was received before notice of Midwest's lien. Moreover, we agree with the appellate court's conclusion that, if we were to find Williams lacked standing, she and similarly situated judgment holders would be barred from any opportunity to assert that their claims were superior to a third party's lien. We thus find that Williams has standing and the appellate court did not err in concluding that she did.

¶ 15    The cases on which Midwest relies do not warrant a different result. Midwest looks to *People v. Matthews*, 2016 IL 118114, *In re M.W.*, 232 Ill. 2d 408 (2009), and *Fanslow v. Northern Trust Co.*, 299 Ill. App. 3d 21, 29 (1998), as support for its claim that Williams lacks standing to challenge service on Sony. In *Matthews*, 2016 IL 118114, ¶¶ 4-5, the defendant attempted to challenge the lack of service on the respondent based on his own failure to properly serve respondent despite him certifying that service was effectuated. This court found that the defendant could not challenge his failure to properly serve the respondent because "[n]one of the notice requirements at issue were designed to allow a petitioner to object to lack of service on behalf of the opposing party." *Id.* ¶ 15. Allowing the defendant to do so would preclude a respondent's right to waive service. *Id.* The court stated that " 'a party may "object to personal jurisdiction or improper service of process only on behalf of himself or herself." ' " *Id.* ¶ 19 (quoting *M.W.*, 232 Ill. 2d at 427, quoting *Fanslow*, 299 Ill. App. 3d at 29).

¶ 16    In *M.W.*, 232 Ill. 2d at 429-30, this court rejected a juvenile's claim that the failure to provide notice to her father violated his due process rights, finding the juvenile's father could waive service and did not claim error in the lack of service and the juvenile could not claim error on his behalf. In *Fanslow*, 299 Ill. App. 3d at 25-26, a Pennsylvania court enjoined respondent despite a lack of service on respondent in the injunction action. The Illinois Appellate Court, applying Pennsylvania law, found that the petitioner lacked standing to assert respondent's challenge to the Pennsylvania court's jurisdiction over it because service was waivable. *Id.* at 30. *Matthews*, *M.W.*, and *Fanslow* are distinguished from the circumstances at bar, where Williams is not seeking to assert Sony's waivable right to notice but is seeking to enforce her own rights as a citation creditor. The controversy here is not over whether Sony was properly given notice. Williams is not seeking to challenge whether Sony has the right to accept service of Midwest's citation by e-mail. Williams is challenging whether Midwest's method of service to Sony in this circumstance can establish a lien priority over Williams's lien.

¶ 17                                B. Forfeiture

¶ 18    Having found Williams had standing to challenge service, we must next consider whether she forfeited her challenge to service by raising the issue for the

first time in her motion to reconsider in the trial court. The appellate court excused the forfeiture, finding that the issue was fully briefed by both parties and that Midwest was not prejudiced by consideration of the issue. We agree that forfeiture should be excused. A reviewing court may "overlook general forfeiture principles in a civil case and consider an issue not raised below if the issue is one of law, is fully briefed and argued by the parties, and the public interest favors considering the issue now." *Forest Preserve District of Du Page County v. First National Bank of Franklin Park*, 2011 IL 110759, ¶ 28. Here, the circumstances are such that excusing forfeiture is necessary to reach a just result. See *Hux v. Raben*, 38 Ill. 2d 223, 225 (1967) (discussing that a reviewing court has a responsibility "for a just result and for the maintenance of a sound and uniform body of precedent [which] may sometimes override the considerations of waiver"). We will address Williams's challenge to Midwest's service by e-mail of its citation to discover Kelly's assets held by Sony.

¶ 19                                    C. Propriety of E-mail Service

¶ 20        Midwest argues that the appellate court erred when it found that its service on Sony via e-mail was not authorized and did not entitle Midwest's lien to a priority position over Williams's lien. Resolution of this issue turns on statutory and rule interpretation. We employ the same rules of interpretation in construing both statutes and rules. *In re Estate of Rennick*, 181 Ill. 2d 395, 404 (1998). Our goal is to give effect to the legislative intent, and the most reliable indicator of intent is the plain language of the statute or rule. *Id.* at 404-05. We review *de novo* the lower court's construction of a statute or rule. *Id.* at 401.

¶ 21        Methods for service of a citation to discover assets are governed by section 2-1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402 (West 2020)) and Illinois Supreme Court Rule 277 (eff. Jan. 4, 2013). Section 2-1402(a) of the Code provides that a judgment creditor may commence supplemental proceedings to enforce a judgment by serving a citation to discover assets upon a judgment debtor or any other person. 735 ILCS 5/2-1402(a) (West 2020). Illinois Supreme Court Rule 277(a), (b) (eff. Jan. 4, 2013) provides that section 2-1402 supplemental proceedings may be commenced at any time "by the service of a citation on the party against whom it is brought." Rule 277(c) states that a citation "shall be served

and returned in the manner provided by rule for service, otherwise than by publication, of a notice of additional relief upon a party in default." Ill. S. Ct. R. 277(c) (eff. Jan. 4, 2013). Service upon a party in default is authorized by Illinois Supreme Court Rule 105 (eff. Jan. 1, 2018), which states, in applicable part, that notice may be served "(1) [b]y any method provided by law for service of summons" or "(2) [b]y prepaid certified or registered mail addressed to the party, return receipt requested."

¶ 22    The plain language of the procedures established by the Illinois Supreme Court Rules and the Code does not authorize service of a citation to discover assets by e-mail. Service of a citation may be effected by "any method provided by law for service of summons" or "[b]y prepaid certified or registered mail." Ill. S. Ct. R. 105(b)(1), (2) (eff. Jan. 1, 2018). Midwest maintains that service by e-mail was authorized by Illinois Supreme Court Rule 11 (eff. July 15, 2020). Contrary to Midwest's assertion, Rule 11 does not apply to citation proceedings. While e-mail service is a "method provided by law for service" as identified under Rule 105(b)(1), it does not apply to the commencement of a citation proceeding. Indeed, its very name precludes its application to citation proceedings. Rule 11 is captioned "Manner of Serving Documents Other Than Process and Complaint on Parties Not in Default in the Trial and Reviewing Courts." *Id.*

¶ 23    Although Rule 11 provides for service by e-mail, the scope of Rule 11 is limited to parties who have made an appearance. The rule states that an e-mail address must be included on attorney appearances and court-filed pleadings. Rule 11 further states that "[u]nless otherwise specified by rule or order of court, documents shall be served electronically." Ill. S. Ct. R. 11(c) (eff. July 15, 2020). Even if Rule 11 were applicable to citation proceedings, it would not apply to Sony because Sony was not a party in this case. Sony had not filed an appearance with the court or provided an e-mail address to the court. It was mere happenstance that Midwest knew Sony's e-mail address from prior contacts between them. The rules concerning service in a citation proceeding specify the methods by which service must occur. Rule 105(b)(2) mandates service of a citation to discover assets via registered or certified mail with return receipt requested. Ill. S. Ct. R. 105(b)(2) (eff. Jan. 1, 2018). Rule 11 does not apply, and the appellate court properly rejected its application.

¶ 24    This same reasoning requires us to reject Midwest's claim that the appellate court's decision is contrary to the encouragement of agreements between attorneys. Midwest argues that it is established that parties may agree to both the manner and method of service, citing *National Equipment Rental, Ltd. v. Polyphasic Health Systems, Inc.*, 141 Ill. App. 3d 343, 347 (1986) ("It is well-settled that a party may not only agree to submit to the jurisdiction of a particular court which would not otherwise have authority over him, but also to the manner and method of service exercised upon him."). We do not disagree with Midwest's contention. However, the ability of parties to agree to accept process and voluntarily appear at court does not allow them to disregard the applicable rules governing service. Nor does the ability of parties to accept process and voluntarily appear at court allow one party to implicate the rights of other parties where, like here, the date of service of the citation establishes lien priority for all parties. In *Shipley v. Hoke*, 2014 IL App (4th) 130810, ¶ 94, this court instructed that "because issuance of a citation imposes very real restrictions and affirmative duties upon a third party—backed by the threat of contempt and monetary liability—the service and notice requirements set forth in section 2-1402 of the Code and Rule 277(c) mirror the requirements of due process." The *Shipley* court reiterated that section 2-1402 and Rule 277 set forth the service requirements in citation proceedings. *Id.* ¶ 92.

¶ 25    Contrary to the service requirements for litigants filing appearances referenced in Rule 11, supplemental proceedings to discover assets are commenced by serving notice. Rule 277(b) provides that a citation proceeding is commenced by service of the citation. In this manner, service of the citation is akin to a summons, commanding the citation respondent to appear in the proceedings. Because service of the citation begins the supplemental citation proceeding against the third party and establishes lien priority, adherence to the service rules ensures due process. See Ill. S. Ct. R. 277(a) (eff. Jan. 4, 2013) (citation proceedings commenced by service of citation); 735 ILCS 5/2-1402(m)(2) (West 2020) (when the citation is served on a third party, the judgment becomes a lien on the debtor's assets that the third party possesses or controls). The procedure the rules and Code set forth for service in a citation proceeding contributes to an even playing field for judgment holders. In the instant case, Midwest had access to the e-mail of Sony's attorney by happenstance of prior dealings with him. Williams did not have access to that e-mail address. Midwest was able to use its knowledge of Castagna's e-mail address to obtain an unfair advantage over Williams, despite the requirement that service for a citation

be via registered or certified mail. Although we concur with Midwest's belief that agreement between attorneys is commendable and to be encouraged when appropriate, the rules proscribe the limits of agreement in the instant circumstances.

¶ 26 The appellate court concluded that Illinois Supreme Court Rule 12 (eff. July 1, 2017) applied and provided that service of Williams's citation was complete on August 21, four days after she mailed it. See Ill. S. Ct. R. 12(c) (eff. July 1, 2017) ("Service by U.S. mail is complete four days after mailing."). Rule 105(b)(2) provides that service is complete upon receipt. Rule 105(b)(2) requires service specifically by certified or registered mail, while Rule 12(c) only references United States mail and does not designate any particular type of USPS mail, such as certified or registered mail. Because Rule 105(b)(2) is the more specific rule, it governs when service is deemed complete rather than Rule 12. See *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002) (where statutory provisions relate to the same subject, the more specific provision controls over the general provision).

¶ 27 We hold that electronic service via e-mail is not authorized in citation proceedings and that the appellate court properly rejected Midwest's contention that it had lien priority based on its service by e-mail to Sony. The electronic service by Midwest on August 19, 2020, was not an authorized method of service in a citation proceeding. As provided by rule and statute, Williams's service of citation was received by Sony on August 24, 2020, as established by the USPS return receipt. Williams's lien is entitled to priority.

¶ 28                                III. CONCLUSION

¶ 29 For the foregoing reasons, the judgment of the appellate court, which reversed the judgment of the circuit court, is affirmed.

¶ 30 Appellate court judgment affirmed.

¶ 31 Circuit court judgment reversed.

¶ 32     JUSTICE ROCHFORD took no part in the consideration or decision of this case.