2023 IL App (1st) 220883

No. 1-22-0883

Opinion filed July 28, 2023

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| WAUKEGAN POTAWATOMI CASINO, LLC, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | |
| THE ILLINOIS GAMING BOARD; CHARLES | ) | |
| SCHMADEKE, Board Chairman; DIONNE R. | ) | No. 2021 CH 5784 |
| HAYDEN, Board Member; ANTHONY | ) | |
| GARCIA, Board Member; MARC E. BELL, | ) | |
| Board Member; MARCUS FRUCHTER, Board | ) | |
| Administrator; and THE CITY OF | ) | Honorable |
| WAUKEGAN, | ) | Cecilia A. Horan, |
| | ) | Judge presiding. |
| Defendants-Appellees. | ) | |

JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Lyle concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Waukegan Potawatomi Casino, LLC, appeals an order dismissing its complaint for declaratory judgment and injunctive relief. The principal issue presented in this appeal is as follows: did the circuit court err in dismissing Potawatomi Casino's complaint for lack of standing because the alleged violations of the Illinois Gambling Act denied Potawatomi Casino its right to compete in a lawful certification process? Because the trial court did err, we reverse and remand.

¶ 2                                    I. FACTS

¶ 3     The General Assembly amended the Illinois Gambling Act in 2019 to authorize the Illinois

Gaming Board to issue 6 new casino licenses, including one in the City of Waukegan, in addition

to the 10 existing licenses. Pub. Act 101-31 (eff. June 28, 2019) (amending 230 ILCS 10/7(e-5)).

The Act provides for a licensing process specific for these new licenses, requiring the host

municipality to initiate the process. *Id.* Notably, the Board can consider issuing a license to an

applicant *only after* the host municipality has certified to the Board that it has negotiated with the

applicant on certain specified details of the proposed casino:

> "The Board shall consider issuing a license pursuant to paragraphs (1) through
>
> (6) of this subsection only after the corporate authority of the municipality or the county
>
> board of the county in which the riverboat or casino shall be located has certified to the
>
> Board the following:
>
>> (i) that the applicant has negotiated with the corporate authority or county
>>
>> board in good faith;
>>
>> (ii) that the applicant and the corporate authority or county board have
>>
>> mutually agreed on the permanent location of the riverboat or casino;
>>
>> (iii) that the applicant and the corporate authority or county board have
>>
>> mutually agreed on the temporary location of the riverboat or casino;
>>
>> (iv) that the applicant and the corporate authority or the county board have
>>
>> mutually agreed on the percentage of revenues that will be shared with the
>>
>> municipality or county, if any;

(v) that the applicant and the corporate authority or county board have mutually agreed on any zoning, licensing, public health, or other issues that are within the jurisdiction of the municipality or county;

(vi) that the corporate authority or county board has passed a resolution or ordinance in support of the riverboat or casino in the municipality or county;

(vii) the applicant for a license under paragraph (1) has made a public presentation concerning its casino proposal; and

(viii) the applicant for a license under paragraph (1) has prepared a summary of its casino proposal and such summary has been posted on a public website of the municipality or the county." 230 ILCS 10/7(e-5) (West 2020).

¶ 4    The City of Waukegan issued a request for qualifications and proposals, soliciting proposals to develop and operate a casino in the City. Waukegan Potawatomi Casino, LLC submitted a proposal in response, and the City held a public meeting during which four casino applicants presented their proposals. Subsequently, the Waukegan City Council voted on resolutions certifying those four applicants to the Board. The council passed resolutions certifying three of the applicants but declined to pass the resolution certifying Potawatomi Casino. A few days later, the council voted to reconsider the resolution regarding Potawatomi Casino but, on reconsideration, did not pass the resolution.

¶ 5    Following the council's adoption of the resolutions, Potawatomi Casino filed an action in the circuit court of Lake County against the City, asserting claims under the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV), the Illinois Gambling Act, and the Open Meetings Act (5 ILCS 120/1 *et seq*. (West 2020)). The City removed the case to the federal

district court, where the case remains pending. *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, No. 1:20-CV-750 (N.D. Ill.)

¶ 6 Subsequently, Potawatomi Casino filed a separate action in the circuit court of Cook County against the City and the Board. In its complaint, Potawatomi Casino sought a declaratory judgment that the City had failed to comply with the statutory requirements in the Illinois Gambling Act to certify applicants to the Board. It also sought to enjoin the Board from issuing a casino license until the City had satisfied those requirements. The circuit court denied Potawatomi Casino's emergency motion for a temporary restraining order, and this court affirmed. *Waukegan Potawatomi Casino, LLC v. Illinois Gaming Board*, No. 1-21-1561 (filed Dec. 16, 2021) (order denying plaintiff's interlocutory appeal). The Board, soon after, issued a finding of preliminary suitability in favor of one of the certified applicants, Full House Resorts. The City and the Board moved to dismiss Potawatomi Casino's complaint (735 ILCS 5/2-615, 2-619.1 (West 2020)), and the circuit court dismissed the complaint with prejudice for lack of standing. Potawatomi Casino timely appealed. Ill. S. Ct. R. 303(a) (eff. July 1, 2017).

¶ 7                                II. ANALYSIS

¶ 8                                A. Standing

¶ 9 Potawatomi Casino argues that the circuit court erred in dismissing its complaint for lack of standing because it did suffer an injury to its right to compete in a lawful certification process. Under Illinois law, standing "tends to vary" from federal law "in the direction of greater liberality." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 491 (1988). Illinois courts are generally more willing than federal courts to recognize standing on the part of any person "who shows that he is in fact aggrieved." *Id.* Lack of standing under Illinois law is an affirmative defense;

it is not jurisdictional. *Glisson v. City of Marion*, 188 Ill. 2d 211, 224 (1999); see also *Soto v. Great America LLC*, 2020 IL App (2d) 180911, ¶ 20. As a consequence, a defendant bears the burden to raise and establish lack of standing, and if not timely raised, it is forfeited. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252-53 (2010). A defendant may properly raise lack of standing in a motion to dismiss brought under section 2-619 of the Code of Civil Procedure. 735 ILCS 5/2-619(a)(9) (West 2020); *Glisson*, 188 Ill. 2d at 220. When considering such a motion, a court must accept as true all well-pleaded facts in the complaint as well as any inferences that may reasonably be drawn in the plaintiff's favor. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. We review a dismissal under section 2-619 *de novo*.[1] *Glisson*, 188 Ill. 2d at 220-21.

¶ 10 The doctrine of standing is designed to preclude parties who have no interest in a controversy from bringing suit and assures that suit is brought "only by those parties with a real interest in the outcome of the controversy." *Id.* at 221. In general, standing requires "some injury in fact to a legally cognizable interest." *Id.* (citing *Greer*, 122 Ill. 2d at 492). The claimed injury must be (1) distinct and palpable, (2) fairly traceable to the defendant's actions, and (3) substantially likely to be redressed by the grant of the requested relief. *Greer*, 122 Ill. 2d at 492-93.

¶ 11 Potawatomi Casino claims a legally cognizable interest in its right to compete in a casino certification process that is fairly and lawfully conducted. The Illinois Gambling Act prescribes a process with which the City is unambiguously required to comply before the Board can consider

---

[1]The City argues that we should review the appeal for "clear error" because it somehow implicates the Board's decision. This contention is wholly without merit. When a circuit court dismisses a complaint under section 2-619, our review is *de novo*. See *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 681 (2010) (reviewing a section 2-619 dismissal of administrative review complaint *de novo*).

issuing a license. 230 ILCS 10/7(e-5) (West 2020). An applicant participating in such statutorily mandated selection process would thus have a right to have a fair and compliant process. See *Keefe-Shea Joint Venture v. City of Evanston*, 332 Ill. App. 3d 163, 171-72 (2002) (a duty is owed to a bidder to award the contract to the lowest, responsive, responsible bidder as statutorily required, and, "as a necessary corollary, a bidder has the right to participate in a fair bidding process"). Although this interest is often implicated in cases involving a competitive bidding process, it is not strictly limited to such context. See, *e.g.*, *Illinois Road & Transportation Builders Ass'n v. County of Cook*, 2022 IL 127126, ¶ 18 (the plaintiffs had standing where the county's unconstitutional diversion of transportation funds decreased the number of projects they could bid on); *Aramark Correctional Services, LLC v. County of Cook*, No. 12 C 6148, 2012 WL 3961341, at *1, 5 (N.D. Ill. Sept. 10, 2012) (request for proposals).

¶ 12    First, Potawatomi Casino's alleged injury to this legally cognizable interest is distinct and palpable. "A distinct and palpable injury refers to an injury that cannot be characterized as a generalized grievance common to all members of the public." (Internal quotation marks omitted.) *Illinois Road & Transportation Builders Ass'n*, 2022 IL 127126, ¶ 17. Potawatomi Casino submitted an application to participate in the City's casino certification process and paid a nonrefundable application fee of $25,000. Potawatomi Casino pursued a significant business opportunity to fairly compete for a casino license, and where that opportunity was denied due to the City's alleged failure to perform the process lawfully, there is a distinct and palpable injury. See *Messenger v. Edgar*, 157 Ill. 2d 162, 171 (1993) (" '[I]nterested' does not mean merely having a curiosity about or a concern for the outcome of the controversy ***.").

¶ 13 Next, this injury is fairly traceable to the actions of the City and the Board. The Act plainly requires that the host municipality "memorialize the details concerning the proposed riverboat or casino in a resolution that must be adopted *** before any certification is sent to the Board." 230 ILCS 10/7(e-5). The Board can act upon the license applications *only after* the municipality sends certifications to the Board. *Id.* The statute does not require the municipality to negotiate with every applicant, but it does require a good-faith negotiation on enumerated items with applicants the municipality certifies to the Board. *Id.* Here, the resolutions that the city council voted on only stated, without more, that the City and each applicant agreed "in general terms" on the enumerated items. The resolutions pointed to each applicant's initial proposal for "the details of the mutual agreements" and contemplated that final negotiations would take place after the Board completes its licensing process.[2]

¶ 14 Potawatomi Casino alleged that the City did not engage in any negotiations with the applicants during the certification process and that the City passed the certifying resolutions that fall short of the statutory requirements. The complaint expressly alleges the following violations:

"a. Contrary to the representation in the City's 'certifying resolutions,' and the Gambling Act's requirements, the City did not negotiate in any respect with casino applicants during the RFQ process.

b. The City and the applicants the City purported to 'certify' did not 'mutually agree' on the items required by the Gambling Act. In fact, the City's 'certifying resolutions'

---

[2]The City maintains that these resolutions are in substantial compliance with section 7(e-5). However, where Potawatomi Casino sufficiently alleged facts, including that the City did not engage in any negotiations with the applicants and that the City contemplated negotiating "after the fact," we accept those factual allegations as true for the purpose of a section 2-619 motion to dismiss. *Sandholm*, 2012 IL 111443, ¶ 55.

recited only that the City and the applicant had 'mutually agreed *in general terms*' on the required items. [Citations.]

c. *** [T]he City did not 'memorialize the details concerning the proposed riverboat or casino in a resolution' adopted by the City's corporate authority, as the Gambling Act requires, and the City's 'certifying resolutions' do not purport to include any such memorialization." C 17-18.

¶ 15    Further, the City's corporation counsel admitted that the City did not engage in negotiations with any applicant during the certification process and that it was "fundamentally impossible" to mutually agree with the applicants on the items as to which the Act requires mutual agreement before the Board may consider issuing a casino owner's license. It is this very failure that Potawatomi Casino complains of. The injury is also traceable to the Board's conduct of acting on the applications that have been certified in a non-compliant process. According to the allegations of the complaint, the Board's acquiescence in accepting the deficient resolutions and commencing the licensing process is necessarily intertwined with the City's conduct, together denying Potawatomi Casino an opportunity to participate in a lawful and fair process:[3]

"35. *** Upon information and belief, the City's decision not to negotiate with applicants reflected and facilitated the City's plan to manipulate the casino certification process to achieve a predetermined outcome. For example, in purporting to rank casino proposals, upon information and belief, the City's outside consultant solicited and considered supplemental information from other applicants, including Full House, but

_____

[3]That the injury is traceable to the Board's conduct is further evidenced by the redressability, as explained below, since the relief that redresses the injury would, in part, require the Board to retract the license already issued to another applicant.

refused to consider supplemental information from plaintiff. [Citation.] Upon information and belief, this discriminatory treatment occurred with the knowledge of and at the direction of the City. [Citation.]

36. Upon information and belief, by failing to reach agreement on details of casino proposals, the City was able to obscure contingencies and weaknesses in other parties' casino proposals. For example, upon information and belief, before the City's purported certification votes, North Point conditioned its casino proposal on being the City's sole selection, and advised the City that its proposal would be less favorable to the City if the City certified multiple proposals to the Gaming Board. [Citation.] Yet the City's resolution for North Point does not reflect this critical qualification. [Citation.]

37. Upon information and belief, the City did not negotiate with applicants because its casino certification process was a sham. Indeed, just before the formal start of the October 17, 2019 special City Council meeting, according to the sworn testimony of a City Council member in the related federal action, Waukegan Mayor Samuel Cunningham approached the City Council member and told him which proposals to vote for:

> . . . as the mayor entered, he came by, he had to pass by my chair, and he said to me, these are the three that we want to send to Springfield [*i.e.*, to the Gaming Board]. Right. And that was what the vote was going to be. Right. Put those three down there. [Citation.]" C 18-19.

¶ 16    The City and the Board both argue that Potawatomi Casino's alleged injury is not traceable to their actions because the City Council had voted to not certify Potawatomi Casino. However, Potawatomi Casino's complaint alleged that the City engaged in a predetermined sham to certify

applicants despite their applications' contingencies and shortfalls while deliberately shutting Potawatomi Casino out of the process. Based on the allegations of the complaint, the City Council's vote to not certify Potawatomi Casino itself constitutes a part of the City's unfair and unlawful certification process at the cost of Potawatomi Casino's opportunity.

¶ 17     As a result, the requested relief is substantially likely to redress Potawatomi Casino's injury, the lost opportunity. Potawatomi Casino sought declarations that the City failed to satisfy statutory requirements for certification and that the Board consequently lacks authority to issue a casino license as well as an injunctive relief enjoining the Board from issuing a casino license until the City complies with the statute. In essence, Potawatomi Casino seeks to repeat the application process on fair and lawful terms. This remedy would correct the alleged injury since it would require the City to conduct the certification process again without the alleged illegality or unfairness. Because the injury is the lost opportunity, Potawatomi Casino need not be certain whether it would ultimately secure the City's certification to the Board in a fair process, so long as the opportunity itself is given. See *Illinois Road &Transportation Builders Ass'n*, 2022 IL 127126, ¶ 27 ("[P]articularly when the injury to a plaintiff is the loss of opportunity to obtain a benefit due to the government's failure to perform a required act *** it is rarely possible to know with any confidence what *might* have happened had the government performed the act at issue or the improper conduct had been corrected." (Emphasis in original and internal quotation marks omitted.)). Accordingly, the circuit court erred in dismissing Potawatomi Casino's complaint for lack of standing.

¶ 18                                    B. Private Right of Action

¶ 19     Defendants argue that the absence of a private right of action under the Act provides an alternative basis on which to affirm. See *Kagan v. Waldheim Cemetery Co.*, 2016 IL App (1st) 131274, ¶ 50 (where there was no right of private action under the statute, the plaintiffs did not have standing to sue for statutory violations). The argument, however, is misguided. Plaintiff here is not seeking to bring an independent cause of action akin to a tort, but rather it is seeking to force statutory compliance. *Noyola v. Board of Education of Chicago*, 179 Ill. 2d 121, 132 (1997) (the four-factor test for private right of action not necessary where the plaintiffs were "not attempting to use a statutory enactment as the predicate for a tort action" but sought to force public officials "to do what the law requires"); *Landmarks Illinois v. Rock Island County Board*, 2020 IL App (3d) 190159, ¶ 62 (the plaintiffs sought only injunctive relief, not tort damages, to "enforce their protectable right to ensure that the public entity defendants do not act in a manner that would frustrate the proper operation of the law"). Accordingly, Potawatomi Casino need not demonstrate that the Act creates an implied right of action with respect to its claim to compel the City and the Board to comply with the Act.[4]

---

[4]Similarly, the argument that the Board has exclusive jurisdiction over Potawatomi Casino's claim is unpersuasive. While the Board has the authority under the Act to "fully and effectively execute [the] Act" (230 ILCS 10/5 (West 2020)), an administrative agency's authority is limited to that which is specified by statute. *Modrytzkji v. City of Chicago*, 2015 IL App (1st) 141874, ¶ 10. The plain language of section 7(e-5) conditions the Board's exercise of authority on the host municipality's certification. 230 ILCS 10/7(e-5) (West 2020). There is nothing in the language that allows the Board to bypass the City's noncompliant certification process, and Potawatomi Casino's claim here is not a claim on which the Board may exercise its exclusive jurisdiction. See *LifeEnergy, LLC v. Illinois Commerce Comm'n*, 2021 IL App (2d) 200411, ¶ 94 (when the plaintiff "challeng[ed] the scope of the agency's power to act, not just identifying irregularities or defects in the process of exercising its power," the claim is proper before the court).

¶ 20                                          C. Mootness

¶ 21    While this appeal was pending, in February 2023, the Board issued a temporary operating permit to Full House, and Full House began operating a temporary casino. On June 15, 2023, the Board issued an owner's license to Full House and approved a one-year extension to operate the temporary casino while the permanent casino facility is under construction. After the issuance of the owner's license, both the City and the Board moved to dismiss the appeal as moot.

¶ 22    Defendants argue that the Board's grant of the license moots the appeal because the court can no longer grant effective relief. An appeal becomes moot "when the resolution of a question of law cannot affect the result of a case as to the parties, or when events have occurred which make it impossible for the reviewing court to render effectual relief." *Marion Hospital Corp. v. Illinois Health Facilities Planning Board*, 201 Ill. 2d 465, 471 (2002). Here, Potawatomi Casino sought more than just an injunction to prohibit the Board from issuing a license. It also sought a declaration that the Board lacked authority to issue a license because of the City's failure to comply with the statutory prerequisites in certifying applicants to the Board. If the court were to provide this requested relief, defendants would be required to retract the issued license and repeat the process. See *Provena Health v. Illinois Health Facilities Planning Board*, 382 Ill. App. 3d 34, 50 (2008) (case not moot even when the Board had already granted the construction permit because the court could still order effectual relief by enjoining the hospital from proceeding with the construction or from obtaining an operating license without a valid permit). Further, the permanent casino is still under construction, and Full House would be operating at its temporary location for another 12 months. This case is decidedly different from *Marion*, which involved the interplay between a planning permit for a surgery center obtained from the Illinois Health Facilities Board

and an operating license issued by the Illinois Department of Public Health. *Marion*, 201 Ill. 2d at 468-70. By the time of the *Marion* appeal, which challenged only the planning permit, a capital expenditure had been approved and made and an operating license had been issued (to which there was no challenge): "No statute or regulation had been cited which would have authorized the Department to suspend or revoke [the] operating license or otherwise limit its medical functions based on an improperly granted planning permit." *Id.* at 475. In short, even assuming the planning permit was improperly issued, there was no longer an effective remedy because there was no legal basis to rescind the operating license.

¶ 23    Further, the fact that Full House has already commenced gambling operations at its temporary facility is of no moment. The Administrative Code allows the Board to find an applicant not suitable for licensing at the final stage of review, even after it has issued the applicant a temporary operating permit. 86 Ill. Adm. Code 3000.230(f)-(g) (2000).

¶ 24    Thus, the current circumstances of the case are such that the court may compel "a restoration of the status quo ante," and where the court is able to render such effectual relief, the case is not moot. *Blue Cross Ass'n v. 666 North Lake Shore Drive Associates*, 100 Ill. App. 3d 647, 651 (1981) ("[I]f the defendant does any act which the complaint seeks to enjoin, he acts at his peril and subject to the power of the court to compel a restoration of the status quo ante ***.").

¶ 25                                III. CONCLUSION

¶ 26    The motions to dismiss the appeal as moot are denied.

¶ 27    The judgment of the circuit court of Cook County is reversed, and the case is remanded for further proceedings.

¶ 28    Reversed and remanded.

*Waukegan Potawatomi Casino, LLC v. Illinois Gaming Board*, **2023 IL App (1st) 220883**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2021-CH-5784; the Hon. Cecilia A. Horan, Judge, presiding. |
| **Attorneys for Appellant:** | Michael J. Kelly, Jill C. Anderson, Dylan Smith, and Martin Syvertsen, of Freeborn & Peters LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Christina T. Hansen, Assistant Attorney General, of counsel), for appellees Illinois Gaming Board, Charles Schmadeke, Dionne R. Hayden, Anthony Garcia, Marc E. Bell, and Marcus Fruchter. Glenn E. Davis and Charles N. Insler, of HeplerBroom LLC, of St. Louis, Missouri, for other appellee. |