**2025 IL 130036**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket Nos. 130036, 130058)

WAUKEGAN POTAWATOMI CASINO, LLC, Appellee, v.
THE ILLINOIS GAMING BOARD *et al.*, Appellants.

*Opinion filed January 24, 2025.*

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1 In June 2019, the General Assembly amended the Illinois Gambling Act (Act) (230 ILCS 10/1 *et seq.* (West 2020)) to authorize the Illinois Gaming Board (Board) to issue six new casino licenses, including one in the City of Waukegan (City). Pub. Act 101-31 (eff. June 28, 2019) (adding 230 ILCS 10/7(e-5)). Thereafter, the City issued a request for qualifications and proposals. Along with several other entities,

Waukegan Potawatomi Casino, LLC (Potawatomi Casino), submitted a proposal. The City passed resolutions certifying three applicants but not Potawatomi Casino. Two years later, Potawatomi Casino filed a complaint for injunctive and declaratory relief, seeking to prohibit the Board from issuing a casino owners' license for the City due to the City's noncompliance with the relevant statute. Following motions by the City and the Board, the Cook County circuit court dismissed the complaint with prejudice for lack of standing. On appeal, the appellate court reversed the circuit court and remanded the cause for further proceedings. For the reasons below, we reverse the decision of the appellate court, which found Potawatomi Casino had standing to bring its injunctive and declaratory relief action.

¶ 2                          I. BACKGROUND

¶ 3        The City's July 3, 2019, request for qualifications and proposals for the new casino license included a " 'non-refundable application fee' " of $25,000. Potawatomi Casino, an Illinois limited liability company owned by the Forest County Potawatomi Community of Wisconsin, paid the $25,000 fee and submitted a proposal. On October 17, 2019, the city council held a special meeting to consider the proposals submitted by the following entities: (1) Potawatomi Casino; (2) Lakeside Casino LLC (North Point); (3) Full House Resorts, Inc. (Full House); and (4) CDI-RSG Waukegan, LLC (Rivers). The city council approved resolutions for North Point, Full House, and Rivers but not Potawatomi Casino. Four days later, the city council reconsidered Potawatomi Casino's proposal but again declined to approve its resolution.

¶ 4        The approved resolutions contained common language, including a declaration certifying the named applicant to the Board. Each resolution first identified the casino's proposal as exhibit A and noted it was attached. The resolutions later stated "the details of the mutual agreements [are] included in the Applicant's Response to the City's Request for Proposals, attached as Exhibit A." The resolutions further stated, "the City contemplates final negotiations on all of the terms with the Applicant cannot take place until after the Board completes its process and issues a license." The resolutions also declared the City and the applicant have "mutually agreed in general terms upon a permanent location for the riverboat." Other

provisions of the resolutions also used the language "mutually agreed in general terms."

¶ 5        On the same day Potawatomi Casino's proposal was denied a second time, Potawatomi Casino filed suit against the City in Lake County circuit court, alleging a violation of (1) the equal protection clause (U.S. Const., amend. XIV), (2) the Act, and (3) the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2020)). Among other relief, Potawatomi Casino sought a declaration that the city council's votes on the resolutions were void, an injunction requiring the City to certify its proposal, and damages for the lost opportunity to develop a casino. The City removed the case to the federal district court. *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, No. 20-cv-750, 2024 WL 1363733, at *1 (N.D. Ill. Mar. 29, 2024), *appeal filed*, No. 24-1751 (7th Cir. May 1, 2024). There, the City moved for summary judgment on all claims. *Id.* at *5. In a March 2024 order, the federal district court found Potawatomi Casino failed to establish a constitutional violation because (1) no reasonable jury could find that Potawatomi Casino was similarly situated to the other casino license applicants and (2) sufficient rational bases existed for the City's decision not to certify Potawatomi Casino. *Id.* at *1. Ultimately, the court granted the City's motion for summary judgment and declined to retain jurisdiction over Potawatomi Casino on the remaining state-law claims. *Id.* Potawatomi Casino filed an appeal with the Seventh Circuit Court of Appeals.

¶ 6        On November 15, 2021, the Board posted its agenda for a special meeting scheduled for November 18, 2021, indicating the Board would decide preliminary suitability for the City's owners' license and address issues related to the applicant found preliminarily suitable. The next day, Potawatomi Casino filed this action in Cook County circuit court against the City and the Board. In its complaint, Potawatomi Casino sought declarations finding (1) "the City has failed to satisfy the requirements for the *** Board to consider issuing a license to operate a casino in Waukegan" and (2) the "Board lacks authority to consider issuing a license to operate a Waukegan casino." It also requested the award of temporary, preliminary, and permanent injunctions to prohibit the "Board from taking formal steps to issue a Waukegan casino license, including by issuing a determination of preliminary suitability, until the City has satisfied the *** Act's requirements." The circuit court denied Potawatomi Casino's emergency motion for a temporary restraining order, and the appellate court affirmed. *Waukegan Potawatomi Casino, LLC v. Illinois*

*Gaming Board*, No. 1-21-1561 (Dec. 16, 2021) (unpublished summary order under Illinois Supreme Court Rule 23(c)) (order denying Potawatomi Casino's interlocutory appeal). Soon after, the Board issued a finding of preliminary suitability in favor of Full House. The City and the Board moved to dismiss Potawatomi Casino's complaint (735 ILCS 5/2-615, 2-619.1 (West 2020)), and the circuit court dismissed the complaint with prejudice for lack of standing.

¶ 7 Potawatomi Casino appealed, asserting the circuit court erred by finding it lacked standing. The appellate court agreed with Potawatomi Casino. 2023 IL App (1st) 220883, ¶ 17. It first noted Potawatomi Casino claims a legally cognizable interest in its right to compete in a casino certification process that is fairly and lawfully conducted. *Id.* ¶ 11. The appellate court found the alleged injury was distinct and palpable because Potawatomi Casino pursued a significant business opportunity to fairly compete for a casino license and that opportunity was denied due to the City's alleged failure to perform the process lawfully. *Id.* ¶ 12. Moreover, it concluded the injury was traceable to the City and the Board because the certifying resolutions fell short of the statutory requirements and the complaint alleges the City failed to negotiate with all the applicants. *Id.* ¶¶ 13-16. Last, it concluded the requested relief of repeating the application process on fair and lawful terms would be substantially likely to redress Potawatomi Casino's injury, the lost opportunity. *Id.* ¶ 17. Additionally, the appellate court explained that, given the injury is the lost opportunity, Potawatomi Casino need not allege it would ultimately secure the City's certification to the Board in a fair process. *Id.*

¶ 8 The appellate court further rejected the City and Board's argument that the absence of a private right of action under the Act provided an alternative basis on which to affirm the circuit court's dismissal order. *Id.* ¶ 19. The court explained the absence of a private right of action under the Act is of no consequence where Potawatomi Casino is not bringing an independent cause of action akin to a tort but instead is seeking to compel statutory compliance. *Id.*

¶ 9 While the appeal was pending in the appellate court, the Board issued a temporary operating permit in February 2023 and an owners' license on June 15, 2023, to Full House. *Id.* ¶ 21. After the issuance of the owners' license, both the City and the Board moved to dismiss the appeal as moot, asserting the appellate court could no longer grant effective relief. *Id.* In its opinion, the appellate court

explained the complaint sought a declaration that the Board lacked authority to issue a license because of the City's failure to comply with statutory prerequisites in certifying applicants to the Board. *Id.* ¶ 22. Thus, if the court were to provide the relief requested, the Board would be required to retract the issued license and repeat the process. *Id.* Additionally, the appellate court noted the permanent casino was still under construction and the Board can find an applicant not suitable for licensing at the final stage of review, even after the Board has issued the applicant a temporary operating permit. *Id.* ¶ 23.

¶ 10       Ultimately, the appellate court denied the motions to dismiss, reversed the judgment of the circuit court, and remanded the cause for further proceedings. *Id.* ¶¶ 26-27. We granted both the City's and the Board's petitions for leave to appeal pursuant to Illinois Supreme Court Rule 315(a) (eff. Oct. 1, 2021).

¶ 11                                    II. ANALYSIS

¶ 12       In addition to awarding the City a casino, the June 2019 statutory amendment set forth the City's responsibilities in the complex licensing process. Thus, we begin our analysis by outlining the City's role in the licensing process. Under the amended statute, the applications for the owners' license for the City were to be submitted to the Board no later than 120 days after June 28, 2019, which was October 28, 2019.[1] 230 ILCS 10/7(e-5) (West 2020). The Board could consider issuing the owners' license to an applicant "only after" the City "certified to the Board" the following:

> "(i) that the applicant has negotiated with the corporate authority or county board in good faith;
>
> (ii) that the applicant and the corporate authority or county board have mutually agreed on the permanent location of the riverboat or casino;

---

[1]In counting days for the due date, the Statute on Statutes would begin counting the 120 days from June 29; because October 27 was a Sunday, the due date would be on Monday, October 28. See 5 ILCS 70/1.11 (West 2018).

(iii) that the applicant and the corporate authority or county board have mutually agreed on the temporary location of the riverboat or casino;

(iv) that the applicant and the corporate authority or the county board have mutually agreed on the percentage of revenues that will be shared with the municipality or county, if any;

(v) that the applicant and the corporate authority or county board have mutually agreed on any zoning, licensing, public health, or other issues that are within the jurisdiction of the municipality or county;

(vi) that the corporate authority or county board has passed a resolution or ordinance in support of the riverboat or casino in the municipality or county;

(vii) that the applicant for a license under paragraph (1) has made a public presentation concerning its casino proposal; and

(viii) the applicant for a license under paragraph (1) has prepared a summary of its casino proposal and such summary has been posted on a public website of the municipality or the county." *Id.*

Moreover, section 7(e-5) required the City to hold a public hearing, at least seven days before its submission of a certification to the Board, to discuss the aforementioned eight items, as well as any other details concerning the proposed casino. *Id.* The City also had to "memorialize the details concerning the proposed riverboat or casino in a resolution that must be adopted by a majority of the corporate authority or county board before any certification is sent to the Board." *Id.* Once the Board received the certification or certifications from the City, its procedures were dictated by section 7, other sections of the Act, and administrative regulations. Having laid out the City's statutory responsibilities, we next address the foundational question of the owners' license validity.

## A. Void Owners' License

Both the City and the Board assert the appellate court erred by concluding Potawatomi Casino's appeal was not moot after the Board's June 15, 2023, issuance of an owners' license to Full House. In response to the City's and Board's mootness

arguments, Potawatomi Casino asserts Full House's owners' license is void because the Board acted outside its statutory authority. Specifically, Potawatomi Casino asserts that, when an agency lacks jurisdiction or the inherent power to make or enter a particular order, the order is void and may be attacked at any time or in any court, either directly or collaterally. See *Goral v. Dart*, 2020 IL 125085, ¶ 51. An agency's decision is void when the agency lacked jurisdiction to make it. *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, ¶ 24. In administrative law, the term "jurisdiction" has the following three components:

> "(1) personal jurisdiction—the agency's authority over the parties and intervenors involved in the proceedings, (2) subject matter jurisdiction—the agency's power to hear and determine cases of the general class of cases to which the particular case belongs [citation], and (3) an agency's scope of authority under the statutes." (Internal quotation marks omitted.) *Goral*, 2020 IL 125085, ¶ 41.

Potawatomi Casino contends the Board lacked the third component of agency jurisdiction because the Board exceeded the scope of its authority by proceeding on the applications certified by the City where the City failed to comply with the procedures of section 7(e-5). We disagree.

¶ 15        Section 7(e-5) of the Act does not grant the Board authority to consider issuing an owners' license for a casino in the City until the City "*has certified to the Board* the following" and then sets forth a list of actions by the City and/or applicant. (Emphasis added.) 230 ILCS 10/7(e-5) (West 2020). Absent in section 7(e-5) is any language requiring the Board to investigate and/or determine whether the City and applicant completed the matters set forth in the statute. Contrary to Potawatomi Casino's assertion, section 7(e-5) does not grant the Board authority to consider issuing an owners' license only after the preconditions are satisfied. Thus, whether the City complied with the requirements set forth in the statute is of no consequence on the question of whether the Board had jurisdiction over the applications. Jurisdiction depends on whether the City has certified to the Board the statutory requirements set forth in section 7(e-5).

¶ 16        The city council approved three resolutions each certifying an applicant to the Board for consideration for the owners' license for a casino in the city. Potawatomi Casino contends the City's noncompliance with section 7(e-5) was obvious on the

face of the resolutions. It notes the resolutions stated the City and the respective applicant mutually agreed "in general terms." Potawatomi Casino also points out the resolutions identified the respective applicant's response to the City's request for proposals as the details of the mutual agreements required by section 7(e-5). While the language of the resolutions added "in general terms" to the statutory requirements requiring a mutual agreement, the resolutions still addressed each of the statutory requirements, purported to comply with section 7(e-5) (as noted in Potawatomi Casino's complaint), and certified the respective applicant to the Board. This is not a situation where the certifications failed to address the statutory requirements.

¶ 17        We find guidance in *Newkirk v. Bigard*, 109 Ill. 2d 28, 37 (1985), where this court recognized a mining board's order that was on its face authorized by statute was not void and thus not subject to collateral attack. There, the plaintiffs argued that the mining board was without authority to issue any order integrating the mineral interests and permitting a party to commence drilling operations that did not contain the statutorily required election provisions and equitable alternatives. *Id.* at 32, 36. This court found the mining board had the inherent authority to issue the integration order by looking at the integration statute, which provided

> "[w]here *** owners have not agreed to integrate their interests *** the Mining Board shall, for the prevention of waste or to avoid the drilling of unnecessary wells, require such owners to do so and to develop their lands as a drilling unit, before issuing a permit for the drilling thereon." (Internal quotation marks omitted.) *Id.* at 37.

The integration statute also gave the mining board the authority to set participation factors and to make provisions for the payment of reasonable actual costs. *Id.* Given the mining board had the statutory authority to enter the integration order, any other statutory noncompliance with the order did not divest the mining board of jurisdiction to issue the order. *Id.* at 34, 36.

¶ 18        In this case, it is section 7(e-5) of the Act that grants the Board authority to consider issuing a casino owners' license, and that section authorizes such action only after the corporate authority in which the casino will be located has certified to the Board the requirements enumerated in that section. 230 ILCS 10/7(e-5) (West 2020). The Board received three certifications from the City that appeared on their

face to comply with the provisions of section 7(e-5). Accordingly, the Board had jurisdiction to consider the three applications for a casino in the City, and the license issued to Full House is not void. Next, we turn to the question of mootness.

¶ 19                                    B. Mootness

¶ 20        This court has recognized an appeal is moot " 'if events have occurred which foreclose the reviewing court from granting effectual relief to the complaining party.' " *McHenry Township v. County of McHenry*, 2022 IL 127258, ¶ 50 (quoting *In re Shelby R.*, 2013 IL 114994, ¶ 15). Both the City and the Board assert the appellate court erred by concluding Potawatomi Casino's appeal was not moot after the Board's June 15, 2023, issuance of an owners' license to Full House. According to the City and the Board, once the owners' license issued, no effectual relief could be granted to Potawatomi Casino. The determination of whether an appeal is moot presents a question of law, which this court reviews *de novo*. *Wright Development Group, LLC v. Walsh*, 238 Ill. 2d 620, 632-33 (2010).

¶ 21        The bulk of Potawatomi Casino's arguments asserting it can be afforded effectual relief are rooted in its previously discussed and rejected position that the owners' license issued to Full House is void. Moreover, Potawatomi Casino does not identify any statutory authority allowing the Board to revoke an owners' license based on a municipality's noncompliance with section 7(e-5), and we find the Act does not provide for such revocation. Section 5 of the Act sets forth the duties and powers of the Board, and none of those provisions give the Board the authority to revoke an owners' license based on a municipality's statutory noncompliance during the certification process or any action not under the control of the license holder. See 230 ILCS 10/5(b), (c) (West 2020). Likewise, section 7 of the Act does not grant the Board the power to revoke an owners' license on the basis of the municipality's statutory noncompliance. See *id.* § 7(e-20) (only granting the Board discretion to revoke an owners' license if the owner fails to begin conducting gambling operations within 15 months of the Board's approval of its application).

¶ 22        Potawatomi Casino points out that a party cannot moot an appeal by taking the very action that a complaint challenges. See *Schnepper v. American Information Technologies, Inc.*, 136 Ill. App. 3d 678, 680 (1985); *Blue Cross Ass'n v. 666 North Lake Shore Drive Associates*, 100 Ill. App. 3d 647, 651 (1981); *Gribben v.*

*Interstate Motor Freight System Co.*, 18 Ill. App. 2d 96, 102-03 (1958). However, the cases cited by Potawatomi Casino do not involve a plaintiff seeking to enjoin a government agency from taking action regarding a third party. The cases also do not involve a statute indicating the government agency should act promptly. See 230 ILCS 10/5(b)(1) (West 2020) (requiring the Board to decide promptly and in reasonable order all license applications); *id.* § 7(e-10) (providing licenses authorized under section 7(e-5) shall be issued within 12 months after the date of the application's submission and, if one cannot be issued within that period, then the Board must provide an explanation as to why and when a determination is expected). In this instance, we find Potawatomi Casino fails to demonstrate said rule applies because the Board acted in accordance with the statute and there are no facts set forth that support finding an attempt to moot the appeal.

¶ 23      Here, Full House has received the owners' license that the legislature allowed with its June 2019 amendment (*id.* § 7(e-5)(3)). Potawatomi Casino's complaint essentially seeks to stop the licensing process before the Board, which is already complete, and redo the City's certification process, which is not possible because the licensing process is complete and not subject to collateral attack. Given those facts, this case is distinguishable from *Provena Health v. Illinois Health Facilities Planning Board*, 382 Ill. App. 3d 34, 51 (2008), where the appeal was not moot because a reversal of the Board's decision to grant a hospital a certificate of need permit would prevent the hospital from obtaining an operating license. Accordingly, we find no effectual relief can be granted, and the appellate court erred by finding the appeal was not moot.

¶ 24      However, our review does not end here. We are still left with the issue of standing. Given our finding that effectual relief cannot be afforded in this matter, one could argue the standing issue is moot. While courts generally do not decide moot issues, an exception to the mootness doctrine permits a court to resolve an otherwise moot issue if it involves a substantial public interest. *McHenry Township*, 2022 IL 127258, ¶ 50.

¶ 25                    C. Public Interest Exception to the Mootness Doctrine

¶ 26      In its brief, the City notes that, given their lucrative nature, decisions over casino licenses can lead to retaliatory lawsuits, which seek to interfere with the

regulatory process and delay or block public benefits. The City points out this is the third lawsuit stemming from its casino certification process. Besides this case and the federal case brought by Potawatomi Casino, Waukegan Gaming, LLC, also filed suit against the City. See *Waukegan Gaming, LLC v. City of Waukegan*, 2023 IL App (2d) 220426 (affirming dismissal of suit brought by Waukegan Gaming, LLC). The City argues the appellate court's standing decision is expansive and actively encourages litigation by future applicants on the losing side of the casino selection process.

¶ 27    The criteria for invoking the public interest exception to the mootness doctrine are as follows: "(1) the public nature of the question, (2) the desirability of an authoritative determination for the purpose of guiding public officers, and (3) the likelihood that the question will recur." *McHenry Township*, 2022 IL 127258, ¶ 50. Although courts narrowly construe the public interest exception, it applies where the court's action is warranted due to the magnitude or immediacy of the interests at issue. *Id.* We find application of the exception is warranted here.

¶ 28    Because the Act was intended to provide economic benefit to the citizens of Illinois (230 ILCS 10/2 (West 2020)) and Potawatomi Casino seeks to collaterally attack the Board's actions under the Act, the issue of Potawatomi Casino's standing to bring the collateral challenge is a question of a public nature. Moreover, the Board received the applications for a license for a casino in Waukegan in October 2019, and the federal action was immediately filed. The state action was filed two years later. The Board eventually issued the license in June 2023. Both the federal litigation and state litigation were ongoing in 2024. As such, litigation has been hanging over the Board during the entire proceedings, and the validity of the license has been in question. Thus, an authoritative determination for the purpose of guiding public officers is desirable. Last, the lucrative nature of an owners' license oftentimes leads to lawsuits by those who do not receive one. See *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 97 (3d Cir. 2011) (recognizing gaming licenses are lucrative and thus decisions involving their issuance are likely to result in lawsuits). As noted, this is the third lawsuit against the City involving its certification process for one casino license. Accordingly, we address the issue of standing.

¶ 29                                    D. Standing

¶ 30        The City and the Board contend Potawatomi Casino lacked standing to bring its injunctive and declaratory judgment action and thus the circuit court's dismissal order should be affirmed. Potawatomi Casino argues the appellate court's finding it had standing was correct.

¶ 31        This court has explained the standing doctrine as follows:

> "The standing doctrine assures that issues are raised only by those parties with a real interest in the outcome of the controversy. [Citation.] Standing requires some injury in fact to a legally cognizable interest. [Citation.] The injury may be actual or threatened and must be (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief. [Citation.] We review issues of standing *de novo*. [Citation.]" (Internal quotation marks omitted.) *Midwest Commercial Funding, LLC v. Kelly*, 2023 IL 128260, ¶ 13.

Moreover, when the cause of action seeks declaratory relief, "there must be an actual controversy between adverse parties, with the party requesting the declaration possessing some personal claim, status, or right which is capable of being affected by the grant of such relief." (Internal quotation marks omitted.) *Illinois Road & Transportation Builders Ass'n v. County of Cook*, 2022 IL 127126, ¶ 13.

¶ 32        We begin by examining the relevant facts at the time Potawatomi Casino filed this action. As alluded to with the mootness issue, obtaining the casino owners' license under section 7(e-5) involved two separate and distinct proceedings, one overseen by the City and one overseen by the Board. See 230 ILCS 10/7(e-5) (West 2020). The City's proceedings are completely governed by section 7(e-5), which dictates what the City must certify to the Board for each applicant. That section contains no limitations on the number of applicants a host municipality may certify to the Board and does not provide for competitive bidding. See *id.* On the other hand, the Board's proceedings are governed by certain regulations and multiple provisions of the Act and involves competitive bidding (*id.* § 7.12).

¶ 33    Two years after the City declined to certify Potawatomi Casino's proposal and while the Board's proceedings were still ongoing, Potawatomi Casino filed suit against both the City and the Board. Given the City did not certify Potawatomi Casino's proposal, Potawatomi Casino did not participate in the Board's licensing process. As we previously found, the Board had jurisdiction over the application process once the City certified the three other applicants to the Board. At that time, the City's role under section 7(e-5) ended.

¶ 34    Both the City and the Board contend Potawatomi Casino did not have a legally cognizable interest at the time it filed suit. However, the appellate court found Potawatomi Casino possessed a legally cognizable interest, which was the right to compete in a certification process that is fairly and lawfully conducted. 2023 IL App (1st) 220883, ¶ 11. In support of that conclusion, the appellate court cited a competitive bidding case. *Id.* (citing *Keefe-Shea Joint Venture v. City of Evanston*, 332 Ill. App. 3d 163, 171-72 (2002)). However, it further noted that, while that right was often implicated in competitive bidding situations, it was not limited to such context and cited *Illinois Road*, 2022 IL 127126, ¶ 18, and *Aramark Correctional Services, LLC v. County of Cook*, No. 12 C 6148, 2012 WL 3961341, at \*1, \*5 (N.D. Ill. Sept. 10, 2012)). 2023 IL App (1st) 220883, ¶ 11.

¶ 35    In *Illinois Road*, 2022 IL 127126, ¶¶ 1, 18, this court found the plaintiffs, a coalition of contracting firms in the public transportation construction and design industry, suffered an injury from the county's violation of a constitutional amendment that required the proceeds from certain taxes and fees to be used for transportation-related purposes. We recognized the diversion of funds negatively affected the pool of jobs and contracts available to the plaintiffs' members. *Id.* ¶ 18. This court further noted that (1) the plaintiffs had alleged in their complaint that their members were suffering economic harm due to the county's ongoing violation of the amendment and (2) we had long recognized economic injuries are a sufficient basis to establish standing. *Id.*

¶ 36    In *Aramark Correctional Services*, 2012 WL 3961341, at \*1, Cook County elected to issue a request for proposals for a new food services contract rather than competitive bidding. The plaintiff was one of two bidders that submitted a proposal, and the county awarded the contract to the other bidder. *Id.* The plaintiff moved for a preliminary injunction barring the county from awarding the contract to the other

bidder, and the county moved to dismiss the plaintiff's claims for lack of standing and failure to state a claim. *Id.* The court recognized "Illinois courts have consistently allowed disappointed bidders to bring suit against the local government entity that allegedly deprived them of a fair bidding process." *Id.* at *6. It concluded that, because the plaintiff alleged a violation of its right to a fair bidding process, it had standing to sue the county for vindication of that right. *Id.* The court did note the fact the plaintiff was not entitled to the contract if the court granted relief that did not affect the plaintiff's right to participate in a fair bidding process. *Id.* at *5.

¶ 37        Here, Potawatomi Casino is raising an issue of statutory noncompliance on the part of the City, which did not conduct any type of bidding process. Unlike the aforementioned cases cited by the appellate court and the cases cited by Potawatomi Casino in its brief, the City did not award a contract or prevent the award of a contract. The City did not have to certify any applicant to the Board and could reject an applicant for any reason. While section 7(e-5) provides the matters the City must certify to the Board, the ultimate decision whether to certify an applicant to the Board rested within the City's discretion. Thus, we do not find the bidding cases cited establish that Potawatomi Casino possessed any vested right to a certain process. As to the right to lawfully conducted certification proceedings, whatever right Potawatomi Casino may have had in such proceedings no longer existed when Potawatomi Casino filed its action two years after the certification process ended. As such, Potawatomi Casino lacked a legal cognizable interest in the casino licensing process when it filed the suit at issue.

¶ 38        Accordingly, Potawatomi Casino did not have standing to bring its declaratory and injunctive suit against the City and the Board, and the appellate court's finding to the contrary was erroneous.

¶ 39                                        III. CONCLUSION

¶ 40        For the foregoing reasons, we hold the circuit court's dismissal of Potawatomi Casino's complaint for lack of standing was proper. Therefore, we reverse the appellate court's judgment reversing the circuit court's judgment.

¶ 41        Appellate court judgment reversed.

- 14 -

¶ 42        Circuit court judgment affirmed.